No. 38,352

OLIVER W. VANDINE, *Appellant,* v. ROSIE L. VANDINE, *Appellee.*

(237 P. 2d 224)

Opinion filed November 10, 1951.

*John Staley Holden,* of Cimarron, argued the cause and was on the briefs for the appellant.

*C. C. Linley,* of Cimarron, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action on a promissory note. A jury trial resulted in judgment for one of the defendants. The plaintiff has appealed and contends his demurrer to defendant's evidence should have been sustained and that there were other enumerated trial errors.

The petition alleged that on August 7, 1941, the defendants, Thomas C. Vandine, Rosie L. Vandine and W. H. Lyon, made and delivered to the plaintiff a promissory note for the sum of $375, due in five years from date and bearing interest from date at the rate of five percent per annum from date until paid. A copy of the note was attached to the petition. It further alleged that no part of the note had been paid. The prayer was for judgment for $375 with interest at five percent from August 7, 1941. Thomas E. Vandine made no defense and judgment was rendered against him on November 14, 1949. Rosie L. Vandine filed an answer on behalf of herself and W. H. Lyon in which she admitted that on or about August 7, 1941, both of them made and delivered to plaintiff a certain promissory note in writing. The answer contained a general denial of the other allegations of the petition and further alleged:

". . . that the promissory note above referred to was given as a renewal of a promissory note from this Defendant to the Plaintiff, made and delivered sometime during the year 1936, the exact date of which this Defendant cannot at this time state. That the promissory note given in the year 1936 and the renewal promissory note above referred to were given without consideration of any nature whatsoever and were given at the request of and for the accommodation of the payee, the Plaintiff herein. That the promissory note given in the year 1936 and the renewal note above referred to were extorted from this Defendant by the Plaintiff by fraud and duress on the part of said Plaintiff."

This was verified by Rosie L. Vandine. Plaintiff filed a reply which contained a general denial of every allegation of new matters stated in the answer and alleged that the note which is the subject of this action was given in exchange for a promissory note held by plaintiff for $300 with approximately five years' interest. It renewed the prayer for judgment.

When the case was called for trial plaintiff introduced the promissory note and rested. Rosie L. Vandine, the only witness shown by the abstract to have been called, testified in substance or as quoted as follows: That Thomas C. Vandine was her husband before her divorce (the date of which is not shown) and W. H. Lyon is her father; that she signed the note which is the subject of this suit and that it is a renewal of the note signed by Thomas C. Vandine, W. H. Lyon and Rosie L. Vandine in 1936. She was asked to tell the circumstances under which the three of them signed the original note and answered:

"Well, it started back in 1935. There was no work here and Oliver came down to visit his folks. He came over and talked to Tom and I and talked us in the notion of going up there to go to work in the gold mine. Oliver was there in the mine. He said that he could get Tom work within two weeks, or two months at the most, and in the meantime he would furnish us a house to live in and furnish us our groceries and clothing until Tom got on work. So we sold everything we had, and Oliver took us up there. We got up there and were there for nine months and no work or nothing at all."

The record shows the plaintiff, Oliver W. Vandine, lived at Leeds, South Dakota, and that he is a brother to the defendant, Thomas C. Vandine. The witness further testified that at the time they went to Oliver's home in South Dakota they had one child about two years of age. Another was born while they were living there. When that child was born they went down and asked for relief and were refused. Oliver furnished them a place to live and their groceries. That kept up for nine months when the witness wrote to her father and mother to come and get them. Her father had no car and hired a Mr. Russell to make the trip. They arrived at Leeds the middle of one afternoon and stayed all night. The next morning when they were packed up and ready to start back to Kansas the plaintiff "came downstairs and says, 'Tom,' he says, 'here's a note; I want you, Rosie and Mr. Lyon to sign it, or you're not going a step of the way home.'" They all signed it. There is no testimony tending to show that any objection was made. Besides Oliver the persons present there were Tom, his wife Rosie, and Mr. and Mrs. W. H. Lyon. This was in August, 1936.

The witness testified that while they lived at Leeds, South Dakota they lived in Oliver Vandine's house, and was asked and answered the following questions:

"Q. Did you pay rent on that house? A. Oliver furnished it to us.

"Q. Did Oliver ever supply you, Tom, or the baby, with groceries of any nature? A. Yes, Oliver furnished us groceries.

"Q. If you were paying for groceries at that time, would you consider say $300 a reasonable figure for board and room for three people for a period of nine months? A. Well, yes, because we got along on just the least we could.

"Q. You wouldn't consider that outrageous, would you? A. No. Sometimes I made up my grocery bill and sent them in to Oliver and sometimes I got what was on it and sometimes I didn't.

"Q. But you did get something to eat? A. Yes."

The witness testified that she was afraid of Oliver and believed he might cause trouble about going if she did not sign the note and that she would not have signed the note if she had felt he would not stop her.

She was asked: "Why was that?" and answered, "Because it was Tom's place to pay it."

Asked to tell the circumstances about signing the renewal note she answered:

"We were in Sublette working and Oliver came over, came to the house, asked for Tom, and I directed him to the field where he was working. He went to the field, seen Tom, and he came back and he said, 'Rosie,' he said, 'Tom has renewed the note and signed it.' He says, 'You signed it before; you sign it again.' I was there by myself, so knowing Oliver, there was only one thing to do, go ahead and sign it and save trouble."

She testified she was afraid of him at that time "Because he had made threats before and I just didn't like trouble and I wasn't going to take any chances."

She was asked: "Q. Well, did he threaten you in any way? A. He said, 'Rosie, you sign this.'"

On cross examination she was asked categorically both with respect to signing the note in 1936 and to the renewal of it in 1941 and answered that Oliver had not threatened to strike her, put her in jail, lock her up, harm her child or her father or Tom, or to take any of her property, or to put her father or Tom in jail. She was further asked and answered questions as follows:

"Q. You read this note over before you signed it, didn't you? A. I did.
"Q. And you have stated that you can read and write? A. I can."

She was asked and answered questions about an attempt of Oliver to have the makers renew the note sued upon when it became due in 1946. She testified:

"A. Oliver said, 'Tom, I came back to renew this note. I want you, Rosie and her dad to sign it.' Tom says, 'I'll sign it if you'll leave Rosie's and Mr. Lyon's name off of it. It's my note; not theirs.' And Oliver objected and they argued there for a while and so Oliver said, 'All right,' he says, 'If you won't have their names on it, renew it like that,' he says. 'There's ways of making you pay it, and I'll show you.'"

Much of this testimony was admitted over objections of plaintiff. At the close of the testimony plaintiff demurred to the evidence on the ground that it stated no defense. The court sustained the demurrer as to W. H. Lyon, but overruled it as to Rosie L. Vandine. It will be noted the testimony did not tend to sustain any of the following defenses pleaded, namely, that the note was "given without any consideration of any nature whatsoever," or that it was given "for the accommodation of the payee," or that it was "extorted" from defendant by "fraud." In this court counsel for appellee does not contend the testimony sustained any of those allegations. If there

had been duress at the signing of the first note in 1935, that is no longer available to the appellee since she signed the renewal note in 1941. The court properly instructed the jury: "It is not an issue in this case whether the first note was signed under duress." Defendant did not complain of that in the court below, and appellee does not complain of it here. The court submitted the case to the jury on the sole question as to whether Rosie L. Vandine signed the renewal note in 1941 under duress. The jury found in her favor and answered special questions. Plaintiff's motion to set aside the answers to the special questions for not being sustained by the evidence, for judgment notwithstanding the verdict, and his motion for a new trial, were all overruled, hence this appeal.

The sole legal question for our determination is whether the evidence was sufficient to sustain the defense of duress. Appellant contends it was not. We think the point is well taken. When plaintiff presented the renewal note to appellee for her signature she was already liable upon the note given in 1936. It had been given for a valuable consideration, the amount of it was not excessive, and its terms were not harsh. All of this was shown by appellee's testimony. It is true that she testified at the trial in November, 1950, more than fourteen years after she had signed the note, that she would not have signed if she had not felt plaintiff would have stopped her from going home, and gave as a reason "Because it was Tom's place to pay it." This did not release her from liability on the note. Many a wife has signed with her husband a note for indebtedness which as between them it was his place to pay. We know of no rule of law that in such a case the wife was not liable to the payee. Counsel for appellee does not contend the wife is not liable to the payee with her husband under such circumstances.

To constitute duress there must be a wrongful act or wrongful threat which compels apparent assent by another to a transaction without his volition. (Restatement, Contracts, § 492.) Nothing of that kind appeared in the testimony of appellant. After plaintiff had seen Tom and he had signed the note plaintiff advised the appellee of that fact, reminded her that she had signed it before, and asked her to sign it again. She read it and signed it, and that is about all there was to the transaction. The principle announced in the Restatement has been announced and followed in many of our decisions. We cite a few of them.

(*Gabbey v. Forgeus, Adm'r*, 38 Kan. 62, 15 Pac. 866; *McCormick v. Dalton*, 53 Kan. 146, 35 Pac. 113; *Banking Co. v. Veale*, 84 Kan.

385, 114 Pac. 229; *Milling Co. v. Gas & Electric Co.,* 115 Kan. 712, 225 Pac. 86; *Riney v. Doll,* 116 Kan. 26, 225 Pac. 1059; *Western Paving Co. v. Sifers,* 126 Kan. 460, 268 Pac. 803; *Jones v. Prickett,* 135 Kan. 640, 11 P. 2d 1008; *Brane v. First National Bank,* 137 Kan. 403, 20 P. 2d 506; *Motor Equipment Co. v. McLaughlin,* 156 Kan. 258, 133 P. 2d 149.)

We know of none to the contrary.

The judgment of the trial court should be reversed with directions to sustain plaintiff's demurrer to defendant's evidence and to render judgment on the note against Rosie L. Vandine. It is so ordered.