Frederick Lawrence WHITE, Jr.;
Benjamin L. Staponski, Jr.,
Plaintiffs–Appellants,

v.

GENERAL MOTORS CORPORATION,
INC., Defendant–Appellee.

No. 88–2684.

United States Court of Appeals,
Tenth Circuit.

July 19, 1990.

Gwen G. Caranchini, Kansas City, Mo., for plaintiffs-appellants.

Paul Scott Kelly, Jr. (R. Kent Sellers with him on the brief) of Gage & Tucker, Kansas City, Mo., for defendant-appellee.

Before LOGAN, McWILLIAMS, and BRORBY, Circuit Judges.

LOGAN, Circuit Judge.

This diversity case commenced as one for wrongful discharge, breach of contract, and slander under Kansas law. The appeal is from the district court's order granting defendant General Motors Corporation's (GM) motion for summary judgment on all counts. *See White v. General Motors Corp.*, 699 F.Supp. 1485 (D.Kan.1988). Plaintiffs, Frederick Lawrence White, Jr. and Benjamin L. Staponski, Jr., contend that the following errors by the district court require the reversal of its order: (1) the district court failed to appropriately apply Kansas law protecting whistle-blowers from retaliatory discharge; (2) the releases signed by White and Staponski, which were relied on by the district court in dismissing their retaliatory discharge and breach of implied employment contract actions, are void due to duress, fraud, ambiguity, and unconscionability; (3) summary judgment was not appropriate because there remained issues of fact to be resolved in White's slander action.[1]

Summary judgment is proper when no material issues of fact are in dispute, and only issues of law remain. All disputed facts must be resolved in favor of the party resisting summary judgment. We review the grant of summary judgment de novo, applying the same standards as the district court. *Flanagan v. Munger*, 890 F.2d 1557, 1561 (10th Cir.1989); Fed.R.Civ.P. 56(c).

White and Staponski were both sixth level supervisors at GM's Fairfax plant in Kansas City, Kansas. In May 1987, White and Staponski's employment at GM was terminated under GM's Special Incentive Separation Program (SISP). Acceptance of SISP required signing a written "Statement of Acceptance," which provided that in exchange for lump sum payments, some career retraining and job search skills training, and certain insurance benefits, the terminated employees would release all claims to future employment with GM and would

> "release and forever discharge General Motors and its officers, directors and employes from all claims, demands, and causes of action, known or unknown, which I may have based on the cessation of my employment at General Motors.

---

1. We do not reach the merits on the claims of breach of implied employment contract because we hold that the releases are valid and conclusively bar any action deriving from claims to continued employment or the method of plaintiffs' termination. By their terms, however, the releases do not bar actions based on GM's behavior after the terminations. The validity of the releases is therefore irrelevant to White's slander action, which we consider separately.

This release specifically includes any possible claims I may have under the Age Discrimination in Employment Act, the fair employment practice or civil rights act of 1964, and any other federal, state, or local law, order, or regulation, or the common law relating to employment and any claims for breach of employment contract, either express or implied.

I further agree not to institute any proceedings against General Motors or its officers, directors, agents, employes, or stockholders, based on any matter relating to the cessation of my employment at General Motors, including, without limitation, actions under the Age Discrimination in Employment Act and the fair employment practice or civil rights law of 1964."

I R. tab 10, Exs. 2–A, 2–B.

Plaintiffs were given two weeks off with pay to consider the SISP offer. During this time, they arranged to consult an attorney.[2] GM notes that despite White and Staponski's professed dislike of the separation terms, they signed the releases, and have retained the lump sum payment and other benefits provided. GM contends, therefore, that White and Staponski's claims for retaliatory discharge, breach of contract, and slander are barred by the terms of the releases.

White and Staponski assert that the releases were executed under duress and cannot, therefore, act to bar their claims. Specifically, the plaintiffs argue that their supervisors at GM gave them two choices—either accept the terms of SISP or be terminated with no benefits. Alternatively, plaintiffs claim that the releases were ambiguous, that their agreement to participate in SISP was induced by fraud, and that the terms of their separation were unconscionable. Plaintiffs contend that they were forced to accept the SISP because they complained of defective brake installation at the Fairfax plant.

## I

Kansas adheres to the employment at will doctrine, and we are therefore required to presume, absent an agreement to the contrary, that any employment relationship may be severed by either party at any time, for any reason. *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685, 687 (1988); *Polson v. Davis*, 635 F.Supp. 1130, 1149 (D.Kan. 1986), *aff'd*, 895 F.2d 705 (10th Cir.1990). However, Kansas does recognize an exception to the doctrine which allows a wrongful discharge suit when an at-will employee is fired for a reason that contravenes some established public policy. *Palmer*, 752 P.2d at 687–90; *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645, 647–649 (1988).

██ White and Staponski allege that during the last year of their employment they complained to GM management of various defects in brake installations at the Fairfax plant; their complaints were met with resistance; and they were reprimanded by plant supervisors for having drawn attention to the defects. Plaintiffs contend that their reports to GM managers constitute whistleblowing within the parameters of the Kansas Supreme Court's opinions in *Palmer* and *Coleman*. We agree. In *Palmer*, the court defined whistleblowing as "the good faith reporting of a serious infraction of ... rules, regulations, or the law [affecting public health, safety or general welfare] by a coworker or an employer to either company management or law enforcement officials." 752 P.2d at 690. Termination in retaliation for whistleblowing is an actionable tort, despite Kansas' continued adherence to employment at will. *Id.*

Nevertheless, to maintain an action for wrongful discharge, White and Staponski must demonstrate that they were treated differently because of their whistleblowing activity. *See id.* at 690 (plaintiff bears

**2.** GM correctly points out that although the attorney provided plaintiffs with no advice, due to their decision not to retain him, that does not affect the fact they had an opportunity to gain legal advice during the two weeks they con-

sidered the proposal; moreover, plaintiffs' consultation with an attorney clearly indicates that they were aware that legal advice would be beneficial to them.

burden of proving that she was discharged in retaliation for whistleblowing). It is undisputed that plaintiffs were only two of many employees who were offered participation in the SISP. To rebut the inference of no dissimilar treatment that arises from this fact, plaintiffs claim that other employees offered participation in SISP were told they could remain at GM in some unspecified positions even if they refused SISP; only White and Staponski were threatened with certain discharge if they refused the program.[3] We accept White and Staponski's factual summary of their termination because all factual questions must be resolved in favor of the parties resisting summary judgment. We therefore assume, for the purposes of this opinion, that White and Staponski were constructively terminated because of their whistleblowing activities. Had they not executed the releases at issue in this case, they would have had a colorable wrongful discharge action. We therefore turn to the validity of the releases.

## II

■ Kansas law favors resolution of disputes through compromise and release. *See Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788, 803 (1980). The existence of a release is an affirmative defense; the defendant bears the burden of establishing it. *Tabor v. Lederer,* 205 Kan. 746, 472 P.2d 209, 211 (1970).

White and Staponski contend that the releases they signed are ineffective due to fraud, ambiguity, and duress. We disagree. Plaintiffs failed to allege with particularity any fraud in the inducement of the releases. There is no evidence that GM misrepresented or withheld any information necessary to the plaintiffs' decision-

making. The district court properly granted summary judgment on this issue.

■ Moreover, the release documents, which were identical in substance, were each only one page long. Although specific statutes were mentioned, there is no indication that plaintiffs were confused regarding what rights they were waiving. Each testified in deposition that he understood his rights and that by executing the release he was waiving them. I R. tab 50 at Ex. 7 p. 61–64 (White deposition); *id.* at Ex. 8, p. 54 (Staponski deposition). White and Staponski, despite reciting a laundry list of alleged ambiguities in the releases, do not assert any confusion or disagreement between the parties regarding the terms of SISP.

Plaintiffs were given two weeks to consider GM's offer: they had the opportunity to talk to an attorney; they contacted personnel at GM to ask questions; they attended one of the career training sessions offered by GM and talked about the proposal with other offerees. We think that Kansas would adopt the view that the fourteen day consideration period was reasonable and noncoercive. *Cf. Bodnar v. Synpol, Inc.,* 843 F.2d 190, 193–94 (5th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988) (in ADEA context, acceptance of early retirement proposal voluntary if offerees had time to consider it and consult attorney; fifteen days not unreasonable).

■ Plaintiffs argue that GM's threats against their jobs constituted duress and that this invalidates the releases. Other jurisdictions, in the age discrimination context, have held that threats of termination may void releases signed in conjunction with early retirement programs,

---

**3.** White and Staponski do not argue that they were never told of the possibility of remaining at GM. Instead, they appear to argue that they were informed just before signing the release of the possibility that they could remain at GM in a position of "extreme vulnerability." Furthermore, they allege that when asked to define "extreme vulnerability," GM supervisors stated that it meant a job from which White and Staponski were certain to be fired. They do not allege that they requested, and were refused,

more time to consider this new wrinkle. Nor do they allege that they would have accepted the unspecified positions had they been offered earlier. Because factually the jobs of extreme vulnerability appear only to represent a delay of what was presented to the plaintiffs as inevitable firing, we will treat the offer as a nullity and assume, for the purpose of this appeal, that plaintiffs were threatened with termination because of their whistleblowing activities.

dependent, of course, on the facts. *See Paollilo v. Dresser Industries, Inc.*, 821 F.2d 81, 84–85 (2d Cir.1987); *Henn v. National Geographic Soc.*, 819 F.2d 824, 828–29 (7th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987); *Bodnar*, 843 F.2d at 193–94; Annotation, *What Constitutes Duress by Employer or Former Employer Vitiating Employee's Release of Employer from Claims Arising Out of Employment*, 30 A.L.R. 4th 294 (1984). *See also Laemmar v. J. Walter Thompson Co.*, 435 F.2d 680 (7th Cir.1970) (recognizing threat of termination as duress in action to rescind employee stock transfer). Kansas has not considered this "economic duress" issue in an employment context. We must therefore predict what the Kansas Supreme Court would decide in a case like that before us. The Kansas Supreme Court has said whether facts as alleged by a party are sufficient to constitute duress is a question of law, *Hastain v. Greenbaum*, 205 Kan. 475, 470 P.2d 741, 746 (1970); thus, we review de novo the district court's holding that plaintiffs did not sign the SISP releases under duress.

While Kansas recognizes duress when one party, by a threat, deprives another of that free will essential to the formation of a legal contract, it is clear that not all threats, even if unlawful, will give rise to a defense of duress. *Id.* The Kansas Supreme Court stated that "a transaction cannot be held to have been induced by duress, *notwithstanding any threats which may have been made*, where the party had and took an opportunity for reflection and for making up his mind, and where he consulted with others and had the benefit of their advice, especially where he was advised by his counsel." *Id.* 470 P.2d at 748 (quoting 1 *Black on Recission and Cancellation*, 2d ed., § 223 at 630–31) (emphasis added). It is undisputed that plaintiffs in the instant case took two weeks off with pay to consider the offer, during which time they consulted with each other, with GM officials, with other offerees, and with an attorney. We do not believe that the Kansas Supreme Court would approach the duress issue differently because of the parties' employment relationship, and we think it would hold that there was not enough to go to a jury on the duress issue in this case.

■ White and Staponski argue that the releases they signed are void for unconscionability. They argue, *inter alia*, that the releases are unconscionable because they were printed forms drawn up by GM, because GM's bargaining power exceeded theirs, because the contract was offered on a take it or leave it basis, and because the terms were ambiguous or deceptive. *See Wille v. Southwestern Bell Telephone Co.*, 219 Kan. 755, 549 P.2d 903, 906–07 (1976).

In order to be unconscionable the agreement must be "so outrageous and unfair in its wording or its application that it shocks the conscience or offends the sensibilities of the court, or is against public policy." *Adams v. John Deere Co.*, 13 Kan.App.2d 489, 774 P.2d 355, 357 (1989). Thus, unfairness alone is not enough—the unfairness must rise to a level of outrage or contravene public policy.

Without repeating previous discussion, we observe that plaintiffs were given ample time and opportunity to consider the offer. They were paid a substantial sum of money ($54,869.88 to White, $66,136.40 to Staponski), were provided with continuing medical insurance coverage, and were offered training courses to facilitate their career change. In context, the terms of plaintiffs' separation from GM do not appear unconscionable. Our collective conscience is not shocked.

■ Plaintiffs also argue that the court must consider the fraud and duress in the inducement of the contracts in order to evaluate unconscionability. We agree that such circumstances as fraud and duress, if they were present, should influence the determination of unconscionability, *see Wille*, 549 P.2d at 907; however, we have determined as a matter of law that the plaintiffs have failed to present sufficient evidence of fraud or duress to survive a motion for summary judgment.

Because we hold that the releases signed by plaintiffs are not voidable due to fraud, ambiguity, duress, or unconscionability, plaintiffs' claims for wrongful discharge

and breach of contract are barred by the releases. Summary judgment on the claims of retaliatory discharge and breach of employment contract was properly granted.

### III

■ The district court's grant of summary judgment on plaintiff White's slander claim was also proper. In his pleadings and affidavit, White asserts that he applied for a job as a store manager trainee with Westlake Hardware. He discussed the job with several persons at Westlake, including Cynthia Mason. During one of his discussions with Mason, he stated that he had been forced out by GM, after eleven years of service. He claims that during this conversation, Mason mentioned a lawsuit against GM, then corrected herself, and made "some mention" of his being a "troublemaker." II R. tab 44, Ex. A-47. From this he concludes that Mason must have contacted GM and that someone at GM must have referred to him as a troublemaker.

GM has introduced the affidavit of Cynthia Mason, in which she stated that she has not discussed White with anyone at GM. *Id.* Ex. A-48. GM has also introduced the affidavits of GM personnel supervisors, who stated that neither they nor anyone known to them had accused White of being a troublemaker in response to a request for a reference.[4] Faced with these affidavits, White cannot rest on his contention that GM has introduced no affidavits swearing that *no one* at GM has said anything defamatory to anyone at Westlake. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is the plaintiff's burden to introduce specific evidence of what was said, by whom, and to whom. *Schulze v. Coykendall,* 218 Kan. 653, 545 P.2d 392, 396–97 (1976). White's affidavit, which fails to ascribe any defamatory statements to GM, is not sufficient to raise a material question of fact, and White's case must fail. *See*

*Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552 ("[T]he plain language of [Fed.R. Civ.P.] 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). We therefore affirm the district court's grant of summary judgment on White's slander claim.

### IV

■ GM has requested an award of sanctions and attorney's fees against the plaintiffs because, it argues, this appeal is frivolous. Fed. R. App. P. 38; 28 U.S.C. § 1927; Tenth Cir. R. 46.5. We deal with sanctions levied by the district court upon plaintiffs and their attorney for the filing of this lawsuit and their actions in the *district* court in a companion appeal, *White v. General Motors Corp.,* 908 F.2d 675 (10th Cir.1990) (*White II*), filed today. We there affirm in part and reverse in part, remanding for further proceedings in accordance with standards we set out in the opinion. Given the fact that we affirm the district court's dismissal of the lawsuit on its merits, and that we find plaintiffs' actions in the district court sanctionable, it might seem an easy determination to award sanctions against plaintiffs and/or their counsel for bringing this appeal. But that is not so.

Had plaintiffs forthrightly acknowledged their signing of a release at the time of their termination, and then attacked the releases on an economic coercion/unconscionability theory in an age discrimination action, that portion of their case certainly would not have been frivolous. In *Paollilo,* 821 F.2d 81, the Second Circuit overturned a grant of summary judgment in an analogous case in which the employee was given only six days to sign an early retirement agreement. In *Bodnar,* 843 F.2d 190, another similar case, the Fifth Circuit struggled a bit before finding that giving

---

4. These officials were identified by plaintiffs as being the ones to whom Mason spoke (or was

likely to have spoken).

employees fifteen days to decide on an early retirement program was enough to deny an age discrimination claim. With the aid of these cases, we think plaintiffs could have formulated a whistleblowing claim also that could not have been considered frivolous.

█ Thus, plaintiffs might have articulated nonfrivolous claims in district court, but did not do so. On appeal they did a somewhat better job, and the briefs and arguments on the duress and whistleblowing issues, though poorly done, cannot, considered by themselves, be deemed frivolous. We decline to hold that an appeal is frivolous per se if the presentation of the issues in district court was bad enough to be sanctionable. Such a draconian rule would make sanctions available in nearly every appeal of a case dismissed for failure to state a claim, unless the appellant is successful. This would constitute too great a chill of advocacy. Therefore, we hold that sanctions are not proper here for the appeal on the duress and whistleblowing issues.

On the other hand, plaintiffs' arguments that the releases were void due to fraud and ambiguity, and plaintiff White's appeal of his slander claim, are patently frivolous. Plaintiffs fail to cite any evidence of fraud perpetrated by GM and seem totally confused regarding exactly what can constitute fraud. On the issue of ambiguity, plaintiffs argue, even in the face of their own deposition testimony that they understood the documents they signed, that the releases were ambiguous. They were not. And plaintiff White's appeal of the court's summary judgment on his slander claim, despite his inability to produce any evidence of what was said, by whom and to whom, is also a clear and obvious loser. These arguments, however, constitute only a very small portion of plaintiffs' briefs on appeal.

Unfortunately, clearly losing and frivolous issues are raised often in otherwise legitimate appeals. A check of recent cases reveals at least thirty-one published opinions of the Tenth Circuit since January 1988 in which we regarded issues raised by the parties as too unworthy or frivolous to even discuss. Perhaps we ought to sanction lawyers, and if appropriate their clients, for pressing arguments on appeal that obviously have no merit. But for now we choose to pass our judgment on the appeal as a whole. Because arguments concerning whistleblowing and Kansas' recognition of economic duress as a basis for setting aside a release appear to form the principal basis of plaintiffs' briefs on appeal, we will overlook the fact that plaintiffs' lesser arguments regarding fraud, ambiguity, and the merits of the slander judgment are clear losers. *Cf. Granado v. Commissioner of Internal Revenue,* 792 F.2d 91, 94–95 (7th Cir.1986) (awarding Fed. R. App. P. 38 sanctions, despite appellant's one nonfrivolous argument, because twenty-two of twenty-four pages of appellant's brief concerned frivolous arguments), *cert. denied,* 480 U.S. 920, 107 S.Ct. 1378, 94 L.Ed.2d 692 (1988).

ACCORDINGLY, the district court's granting of summary judgment is AFFIRMED, and sanctions on appeal are DENIED.