936 F.2d 583
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
INVESTMENT COMPANY OF the SOUTHWEST, INC., a New Mexico
corporation, Plaintiff-Appellee,
and
J.A. Cardwell, Defendant,
v.
B.D. REYNOLDS, Jr., Defendant-Appellant.
 No. 90-2129.
 United States Court of Appeals, Tenth Circuit.
 June 28, 1991.
 
 Before STEPHEN H. ANDERSON, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. In addition, the parties have stipulated to submitting this case on the briefs. The case is therefore ordered submitted without oral argument.
 
 
 2
 This appeal arises from the efforts of plaintiff Investment Company of the Southwest, Inc. to recover on promissory notes executed by defendants J.A. Cardwell and B.D. Reynolds. The district court granted Investment Company's motion for summary judgment against both defendants, and they filed a timely notice of appeal. Following briefing in this court, the parties stipulated to dismissal of defendant Cardwell. Therefore, this appeal now concerns only defendant Reynolds.[1] We affirm.
 
 Facts
 
 3
 On March 1, 1982, Reynolds executed a promissory note in favor of Security National Bank of Lubbock, Texas, in the principal amount of $150,000.00. At the time, Reynolds was operating a Mack Truck dealership in Hobbs, New Mexico. He was an experienced businessman and had been involved in many financing and loan arrangements over the years. The money from the note was used to purchase stock in First City Financial Corporation, a bank holding company.
 
 
 4
 Through a series of assignments, the note was ultimately transferred to First City National Bank. On April 4, 1984, Reynolds executed an allonge with that bank which modified and extended the terms of the note. First City was later succeeded by Moncor Bank, which ultimately became New Mexico National Bank. In 1986, New Mexico National went into receivership, and the Federal Deposit Insurance Corporation (FDIC) took over. The FDIC later transferred various assets of the bank to Investment Company, including this note. Investment Company then filed this lawsuit to collect on the note, which was in default.
 
 
 5
 In a related, but independent, proceeding, the First National Bank of Lea County (later known as First City National Bank) filed suit against Reynolds and others in February, 1984. In that action, the bank sought to collect on several defaulted promissory notes. The note at issue here was not among them. In April, 1984, Reynolds signed a settlement agreement in that case which stated, in part,
 
 
 6
 C. Upon execution of the Note, First City [National Bank] shall dismiss the lawsuit presently pending in District Court, without prejudice, and Reynolds, Cardwell, and Russell, in consideration of the release of said lawsuit, hereby release First City from any claims which they or any one of them may now have against First City resulting from any past actions of First City, its officers or directors.
 
 
 7
 D. This Agreement shall survive and continue to bind all the parties following compliance with all of the foregoing provisions and shall be binding upon the parties, their heirs, successors and assigns.
 
 
 8
 Rec.Vol. I doc. R-21, Attachment 1 at 2.
 
 
 9
 Prior to signing the settlement agreement, Reynolds consulted with his attorney. At the time, both men believed that the promissory note in this case was invalid because it was executed under duress. In Reynolds' deposition, the following colloquy took place:
 
 
 10
 Q. Was [your attorney] or anyone else aware of the settlement agreement conference that you had here in Albuquerque prior to actually having the meeting?
 
 
 11
 A. Yes.
 
 
 12
 Q. When did he become aware of that?
 
 
 13
 A. The morning we had the meeting, prior to meeting with them.
 
 
 14
 Q. Is that a contact that you made?
 
 
 15
 A. We made it as a group.
 
 
 16
 Q. Where were you at when that was done?
 
 
 17
 A. If I'm not mistaken, [he] picked us up at the airport and we had breakfast at the Marriott across the street from the bank and discussed this.
 
 
 18
 Q. At the time you had your meeting with [your attorney] were you aware of the fact that, in your opinion, there was a problem with the stock loan note?
 
 
 19
 A. Well, I felt like the stock loan note was phony and illegal.
 
 
 20
 Q. Mr. Russell said in his deposition that in hindsight the biggest mistake you-all made was not listening to [your attorney].
 
 
 21
 A. That's correct. He begged us not to make the settlement.
 
 
 22
 Rec.Vol. I doc. R-21, Attachment 2. Despite his concerns, and his attorney's advice, Reynolds signed the agreement.
 
 
 23
 In the district court, Reynolds argued that the promissory note, settlement agreement and allonge are invalid because they were procured under duress. Specifically, he contended that various bank officers threatened to call all his outstanding loans unless he purchased stock in First City Financial Corporation. The settlement agreement and allonge were allegedly part of the coercion, as First City Financial was the holding company for First City National Bank. Reynolds also asserted Investment Company was not a holder of the note. The district court, while questioning Reynolds' argument regarding the validity of the waiver contained in the settlement agreement, nevertheless ruled that the D'Oench, Duhme doctrine governs this case, thus extinguishing any affirmative defenses. See 12 U.S.C. Sec. 1823(e); D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942). The court also ruled Investment Company was a proper transferee of the note. Because we hold that Reynolds waived all claims against First City National Bank and its successors, we need not reach application of this doctrine. See Colorado Flying Academy, Inc. v. United States, 724 F.2d 871, 880 (10th Cir.1984) ("we can affirm on any grounds that find support in the record"), cert. denied, 476 U.S. 1182 (1986). Further, we agree with the district court that Investment Company is the proper party to enforce this note.
 
 Standard of Review
 
 24
 We review the grant of summary judgment in the same manner as the district court. Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990). It is appropriate only where there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Fed.R.Civ.P. 56(c). Once such a motion is properly supported, however, the non-moving party has the burden of showing material factual issues exist. Brown v. Parker-Hannifin Corp., 746 F.2d 1407, 1412 (10th Cir.1984). Resting on allegations made in the pleadings is insufficient. Id. It is with these principles in mind that we address Reynolds' arguments.
 
 
 25
 Investment Company's Status as Holder of the Note
 
 
 26
 Pursuant to N.M.Stat.Ann. Sec. 55-1-201(20) (1990 Supp.), a "holder" is defined as "a person who is in possession of ... an instrument ... issued or indorsed to him or to his order or to bearer or to blank." There is no dispute in this case that Investment Company is in possession of both the allonge and the promissory note. Reynolds' argument, therefore, is limited to his assertion that the note was not properly indorsed to Investment Company.
 
 
 27
 The documents filed in conjunction with Investment Company's motion for summary judgment follow the transfer of the note from Security National Bank through three other institutions to Rio Grande Valley Bank. Reynolds does not dispute these transfers. First City National Bank then acquired Rio Grande Valley Bank. First City subsequently changed its name to Moncor Bank, then was succeeded by New Mexico National Bank.[2] In July 1986, the FDIC was appointed as receiver for New Mexico National. In a loan sale agreement dated October 21, 1986, the FDIC transferred certain assets, including this note, to Investment Company. In addition to the transfer documents identifying this chain of assignments, Investment Company also filed affidavits from the FDIC and its own president attesting to the transfers. See Rec.Vol. I doc. R-22, affidavit of Bob Tinley and attachment 3.
 
 
 28
 Reynolds' primary argument in response to these documents is that New Mexico National Bank is not identified by name in the loan sale agreement. This argument is not persuasive. The loan sale agreement identifies the Moncor Banks, New Mexico National's predecessor, as a "former bank" whose assets are included in the transfer. Further, affidavits from the FDIC and Investment Company attest to the transfer of this note. Reynolds has not offered any evidence to dispute these documents. We therefore affirm the district court on this issue.
 
 Settlement Agreement
 
 29
 The settlement agreement which Reynolds signed in 1984 waives any and all claims against First City National, its successors and assigns. In New Mexico, there is a strong presumption in favor of the enforceability of settlement agreements. See Gonzales v. Atnip, 692 P.2d 1343, 1344 (N.M.Ct.App.1984), cert. denied, 693 P.2d 591 (1985); see also Sun Country Sav. Bank of N.M., F.S.B. v. McDowell, 775 P.2d 730, 733 (N.M.1989) ("The McDowells negotiated and executed the stipulation [which waived their claims]; thus, we see no reason why they should not be bound by its terms."). In order to overcome enforcement of a settlement, Reynolds must produce clear and convincing evidence that the agreement should be set aside. Quintana v. Motel 6, Inc., 693 P.2d 597, 598 (N.M.Ct.App.1984). As a matter of law, Reynolds failed to do so.
 
 
 30
 Reynolds asserts the settlement agreement is invalid because it is the product of economic duress. It is undisputed, however, that Reynolds consulted with his attorney prior to signing the agreement. He admits both he and his counsel had concerns regarding the validity of the promissory note in this case. Despite these concerns, he freely signed the document. Under these circumstances, we hold Reynolds failed, as a matter of law, in showing the agreement is unenforceable. See Hastain v. Greenbaum, 470 P.2d 741, 748 (Kan.1970) (no duress where party consulted with counsel prior to signing settlement agreement); Carrier v. William Penn Broadcasting Co., 233 A.2d 519, 521 (Pa.1967) (same). See generally Annotation, Economic Duress or Business Compulsion in Execution of A Promissory Note, 79 A.L.R.3d 598, 614 (1977). Because the settlement agreement applies to all future claims and is binding on First City National's successors and assigns, it is binding here.
 
 
 31
 Consequently, the judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Investment Company originally filed separate complaints against the two defendants. These actions were consolidated in the district court, and one notice of appeal was filed
 
 
 [2]
 Reynolds admits these transfers occurred. See Appellant's Opening Brief at 15