**Opal HALL, Petitioner,**

v.

**HOWARD JOHNSON OF OKLAHOMA, INC., Travelers Insurance Company and the State Industrial Commission of the State of Oklahoma, Respondents.**

No. 36886.

Supreme Court of Oklahoma.

May 15, 1956.

Ed Chapman, Bristow, W. Leslie Webb, Tulsa, for petitioner.

Sanders & McElroy, Tulsa, Mac Q. Williamson, Atty. Gen., for respondents.

HUNT, Justice.

On the 20th day of March, 1954, Opal Hall, petitioner herein, filed a claim for compensation against her employer, Howard Johnson of Oklahoma, Inc., and its insurance carrier, Travelers Insurance Company, respondents herein, in which she states that on March 18, 1954, while in the employ of Howard Johnson of Oklahoma, Inc., she sustained an accidental injury consisting of an injury to her back, resulting in some permanent disability to her person; that at the time the injury occurred she was working as a cook in a restaurant owned and operated by her employer and same was caused when she stepped in some water on the floor and slipped and fell.

Respondents defended on the theory that petitioner sustained no disability as the result of her injury occurring on March 18, 1954, while in the employ of Howard Johnson of Oklahoma, Inc. but she had sustained an injury to her back February 15, 1953, while in the employ of the Palace Drug Store in Bristow, Oklahoma, and that the disability she now has is due entirely to that injury.

The trial commissioner so found and entered an order denying compensation, which was sustained on appeal to the Commission en banc.

Petitioner brings the case here to review this award and contends that it is not sup-ported by the evidence and is contrary to law.

The evidence on behalf of petitioner tends to establish the following facts: On the 18th day of March, 1954, she sustained an accidental injury at the time and in the manner stated in her claim. She notified her employer of such injury and was furnished medical treatment. She was treated by several physicians who advised her that she had sustained an injured disc as the result of her accident; that she thereafter was operated for such injury.

Petitioner, however, testified that on February 5, 1953, while working for the Palace Drug Store, she sustained an injury to her back. This injury occurred when she stepped in some water on the floor of the store and slipped and, in trying to catch herself, twisted her back; that she was treated for such injury for about one month. She felt better as a result of that treatment but, under the advice of her doctor she did not attempt to do any work for about a month thereafter when she started doing her house work and finally washing and ironing. She has now completely recovered from that injury.

The Palace Drug Store did not carry compensation insurance for its employees but carried liability insurance. She made a claim against the insurance company for that injury and thereafter settled her claim for the sum of $6,000. However, after paying her attorney fee, doctor and hospital bills she had left only the sum of $2,880.

In the early part of August, 1953, she started working for her present employer, Howard Johnson of Oklahoma, Inc., and continued to work without any difficulty until she sustained her present injury on March 18, 1954, while in the employ of said employer.

Petitioner relies largely on the testimony of Dr. J. to sustain her contention that the disability she now has is due to her injury of March 18, 1954, rather than to the injury sustained in 1953, while working for the Palace Drug Store.

The doctor testified he first saw and examined petitioner on July 14, 1954. He

took x-rays of her back and found her suffering from an injured disc. He thereafter operated for that trouble. He further testified:

"Q. Doctor, I wish you would in detail tell the commissioner what you found at the time you performed the surgery on the claimant July 21, 1954. A. The lumbo-sacral joint was exposed, all the ligaments removed, the dura and its contents were restricted to the left and the intervertebral disc at that level on the right was exposed and opened and explored. There was a definite bulging and softening of the lumbo-sacral intervertebral disc and the posterior longitudinal ligament was found to be thin and weak. The intervertebral disc material was found to be poorly attached to the adjacent bodies of the vertebrae so that it could be easily removed by forceps. The large amount of loose disc material was removed and then the lumbo-sacral joint was fused.

"Q. How was this fusion done, doctor, briefly? A. I used bone graft taken from her right posterior superior iliac spine area. Affixed the 5th lumbar vertebra to the sacrum by means of two stainless steel screws placed across the facetid joints and then secured these joints further with a bone peg in each side by a block of iliac bone between the spinous process of the 5th lumbar and first sacral segment, and put in bone chips throughout the interlaminar area."

He further testified he could not definitely determine as to whether the injured disc was of old or new origin, but after testifying in detail as to her symptoms and conditions found to exist, expressed the opinion that the injury to her disc was caused by the injury sustained March 18, 1954, while in the employ of Howard Johnson of Oklahoma, Inc., and that she now has as a result of that injury a 25% permanent partial disability to her body as a whole.

On cross-examination the doctor testified that he also examined petitioner for injury sustained in 1953 when she was working for the Palace Drug Store. She was then making a claim against the insurance company for that injury and his examination was made and report furnished her counsel in connection with that claim. Petitioner at that time was making the same complaint as she made when he examined her for her 1954 injury. Her symptoms and condition were the same. He further testified:

"Q. The x-ray examination at that time compared to the x-ray examination in July, 1954, showed no significant difference? A. That's right.

"Q. On both occasions there was a moderate narrowing to the right? A. That's right.

"Q. In the lumbo-sacral joint—was it in the lumbo-sacral joint at the time of surgery that you found the abnormalities? A. It was.

"Q. Was it your opinion in April, 1953 that that was where the abnormalities existed? A. Yes.

"* * * * * *

"Q. It was your opinion in April, 1953 in connection with the injury she had while working for the drug company that she was then totally disabled from manual labor? A. Yes.

"Q. And it was your opinion she would remain so until surgery were completed? A. That was my opinion."

The doctor later testified that he was mistaken in his opinion expressed in 1953 that petitioner was then totally disabled from performing ordinary manual labor and would remain so until and unless her condition was corrected by surgery, but he was not mistaken as to the symptoms and conditions then found to exist and that such conditions and symptoms indicated a ruptured disc.

Dr. G. stated that he was an orthopedic surgeon. He examined petitioner on the 22nd day of March, 1954, and obtained a history of the case, including the history of her having sustained an injury in 1953 while working for the Palace Drug Store,

and that she had recovered from that injury. He again examined her on the 30th day of March, 1954, and after testifying in detail as to the conditions found to exist expressed the opinion that she now has a 15% permanent partial disability to her body as a whole and that such injury and disability was primarily caused by the injury sustained by her in 1953 while working for the Palace Drug Store. This, in substance, constitutes the evidence in the case. We think it sufficient to sustain the finding and order of the State Industrial Commission.

■ We have heretofore held that where, in an action to recover compensation under the Workmen's Compensation Act, it is shown that the employee had suffered two successive accidents while working on different jobs, the question of whether the disability sustained by him should be attributed to the first accident or the second accident depends on whether or not the disability sustained was caused by a recurrence of the original injury or by an independent and intervening cause. If the second injury was a mere recurrence of the first injury the disability will be attributed to the first accident, but if due to an independent and intervening cause the disability will be attributed to the second accident, and a finding of the Commission on this question will not be disturbed by this court on petition for review where reasonably supported by competent evidence. Sutton & Sutton v. Courtney, 203 Okl. 590, 224 P.2d 605, Sigler v. Tillery and Jones, Okl., 292 P.2d 423.

While the medical evidence is in conflict, we think it is sufficient from which the conclusion may reasonably be drawn that the injury sustained by petitioner in 1954 was a mere recurrence of the injury sustained in 1953 and is sufficient to sustain the order of the Commission denying compensation.

Order sustained.

WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY and JACKSON, JJ., concur.

BLACKBIRD, J., dissents.