TRW/REDA PUMP, own risk, Petitioner,

v.

**Thomas BREWINGTON and the Workers' Compensation Court, Respondents.**

TRW/REDA PUMP, own risk, Petitioner,

v.

**Steven DEAN and the Workers' Compensation Court, Respondents.**

TRW/REDA PUMP, own risk, Petitioner,

v.

**Charles EDEN and the Workers' Compensation Court, Respondents.**

TRW/REDA PUMP, own risk, Petitioner,

v.

**James THOMAS and the Workers' Compensation Court, Respondents.**

TRW/REDA PUMP, own risk, Petitioner,

v.

**Doyle CONNER and the Workers' Compensation Court, Respondents.**

TRW/REDA PUMP, own risk, Petitioner,

v.

**Jim D. SWALLEY and the Workers' Compensation Court, Respondents.**

Nos. 74839, 74918, 74972, 74973, 75686 and 75712.

Supreme Court of Oklahoma.

March 3, 1992.

Rehearing Denied April 21, 1992.

---

Thomas E. Steichen, Jo Anne Deaton, Rhodes, Hieronymus, Jones, Tucker and Gable, Tulsa, for petitioner.

Richard A. Bell, Norman, for respondents.

LAVENDER, Justice.

We decide 1) whether 20 O.S.Supp.1982, § 15.1, provides a statutory basis for an

appellate court to allow an award of attorney fees against a party taking a patently frivolous appeal from an order of the Oklahoma Workers' Compensation Court and 2) if so, are one or more of the appeals before us patently frivolous? We hold § 15.1 is a statute of general application affording a statutory basis for this Court or a Court of Appeals to allow an award of attorney fees against an appealing party bringing a patently frivolous appeal from an order of the Workers' Compensation Court. We also hold three of the appeals have no legitimate legal or factual basis and are, thus, patently frivolous. We hold the other three appeals are not frivolous, even though unsuccessful, for the reason one argument made therein had a legitimate legal basis in light of the facts in the record(s) and concerned an area of the law in flux at the time the argument was made.[1]

Respondents, former employees of Petitioner, TRW/Reda Pump, filed separate claims for workers' compensation benefits. One case alleged cumulative trauma to the back, another to an elbow, a third to both knees and the other three injury to the lungs and/or respiratory system from exposure to dust, fumes and other airborne substances. Each matter proceeded to trial for permanent partial disability. An award was entered finding some percentage of permanent partial disability in each case. TRW filed for review with three-judge panels of the Workers' Compensation Court. The awards were either affirmed or modified in part, but in the latter cases an award for permanent partial disability was still entered, albeit in a lesser percentage than awarded by the trial judge. TRW filed appeals. In each case the orders of

the three-judge panels were affirmed by the Court of Appeals, Division 2.

Respondents, relying on § 15.1, then filed applications for appellate attorney fees arguing the appeals were frivolous, without merit and filed for the purpose of delay. TRW argued § 15.1 did not apply in workers' compensation appeals and, in any event, the appeals were not frivolous. In each case by 2–1 decision the Court of Appeals held respondents were entitled to fees and remanded to the trial court for determination of a reasonable fee. Certiorari was granted on the attorney fee issue.[2]

**PART I: SECTION 15.1 APPLIES TO APPEALS IN WORKERS' COMPENSATION CASES**

Section 15.1 provides:

On any appeal to the Supreme Court, the prevailing party may petition the court for an additional attorney fee for the cost of the appeal. In the event the Supreme Court or its designee finds that the appeal is without merit, any additional fee may be taxed as costs.

TRW relies on the case of *Safeway Stores, Inc. v. Arnold,* 778 P.2d 941 (Okla.Ct.App.1989), to argue § 15.1 is applicable only to appeals where an attorney fee is allowed by law to the prevailing party in the trial court and it does not apply to a workers' compensation appeal because a lower court award of attorney fees in such a case is not *in addition* to an award of benefits, but is paid out of the benefit award itself. Although *Arnold* supports this view (*Id.* at 942), *Arnold* interprets § 15.1 incorrectly. Such an interpretation is inconsistent with the purpose of § 15.1 and the legislative enactment of which it is a part, it would lead to absurd consequences, to the ultimate result the Legisla-

---

**1.** Petitioner, TRW/Reda Pump, requested consolidation of Case Nos. 74,918, 74,973, 75,686 and 75,712 for purposes of certiorari review arguing consolidation will promote judicial economy and assure uniformity in the application of 20 O.S.Supp.1982, § 15.1. It did not request consolidation as to Case Nos. 74,839 and 74,972. Respondents, in the cases where consolidation is requested, objected. They assert there was no consolidation at the lower court level, the records of trial are different and there were separate opinions in the Court of Appeals.

We consolidate all six cases under Case No. 74,839. All involve the same legal issues and consolidation will promote judicial economy. We can discern no prejudice to any party by consolidation for certiorari review.

**2.** In none of the six cases before us did TRW seek certiorari review as to the Court of Appeals' affirmance of the awards of permanent partial disability.

ture passed a meaningless statute and it is inconsistent with previous interpretations by us and numerous other decisions from the Court of Appeals rendered since § 15.1 was enacted in 1982.

■ The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. *Ledbetter v. Alcoholic Beverage Laws Enforcement Commission,* 764 P.2d 172, 179 (Okla.1988). If a statute is plain and unambiguous and its meaning clear and no occasion exists for the application of rules of construction a statute will be accorded the meaning expressed by the language used. *Berry v. Public Employees Retirement System,* 768 P.2d 898, 899–900 (Okla.1989), quoting *Caves Springs Public School District,* 613 P.2d 1046, 1048 (Okla.1980). However, where a statute is ambiguous or its meaning uncertain it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent. *See Berry, supra* at 900–901; *Grand River Dam Authority v. State,* 645 P.2d 1011, 1019 (Okla.1982). Further, the Legislature will not be presumed to have done a vain and useless act in the promulgation of a statute [*Cunningham v. Rupp Drilling, Inc.,* 783 P.2d 985, 986 (Okla.Ct.App.1989)], nor will an inept or incorrect choice of words be applied or construed in a manner to defeat the real or obvious purpose of a legislative enactment. *Wooten v. Hall,* 442 P.2d 334, 336 (Okla.1968).

■ Section 15.1 does not expressly indicate it applies only in appeals where an attorney fee is allowed by law in the trial court. The ambiguity or uncertainty exists because the word additional immediately precedes the words attorney fee in the first sentence of the provision and the word fee in the second. Viewed in isolation the placement of the word additional *might* lead one to conclude an attorney fee had been awarded at some prior stage of the

case. However, when one views § 15.1 as a whole it is clear the word additional *is not* a limitation on the types of appeals which fall within its scope. The appeals covered are set forth in the first seven words of the statute, i.e. "[o]n *any appeal* to the Supreme Court". (emphasis added) It is, thus, obvious to us the provision was intended to apply to all appeals brought before this Court.

■ The legislative intent behind a statute is to be ascertained from the whole act in light of the general purpose and object. *Midwest City v. Harris,* 561 P.2d 1357, 1358 (Okla.1977). Section 15.1 was passed as part of an Act (H.B. 1611 found at 1982 Okla.Sess.Laws, Ch. 336, pp. 1005–1007) primarily concerning the makeup of the Court of Appeals. The number of judges sitting on the Court of Appeals was increased from six to twelve (20 O.S.Supp. 1982, §§ 30.2 and 30.9a). Continuation of authority to this Court to make temporary assignments of active or retired judicial officers or lawyers to the Court of Appeals to assist in deciding cases (20 O.S.Supp. 1982, § 30.14) was also contained in the Act. Obviously, the general purpose and intent of the Act was to provide resources to dispose of appellate cases and to assist the appellate judiciary in handling an ever increasing caseload.[3] Human resources were provided in the form of additional permanent members of the Court of Appeals and continued authorization for temporary members to dispose of pending cases. On the other hand, § 15.1 was a legislative recognition part of the increasing caseload consisted of appeals having absolutely no merit and was to act as a deterrent to the filing of these totally meritless appeals.

Although placement of the word "additional" appears to exhibit poor draftsmanship we will not allow such fact to defeat the real and obvious purpose of the provision. Instead of exhibiting an intent to limit the types of appeals falling under the

---

**3.** For calendar years 1972 through 1980 the cases filed in the Supreme Court increased each year. Report on the Judiciary, State of Oklahoma 27 (1979) and Report on the Judiciary, State of Oklahoma 27 (1980). In 1972 the number of cases filed was 801. In 1980 the number totaled 1,469. For fiscal year July 1, 1981 to June 30, 1982 the number reached 1,718. Annual Report on the Oklahoma Judiciary 28 (1981–1982). The total cases filed in fiscal year 1990 was 2,356. State of Oklahoma, The Judiciary, Annual Report 8 (FY–90).

statute, use of the word additional was most likely an attempt to express an intent that in addition to a fifty ($50.00) dollar charge required by 20 O.S.1981, § 15 [now one hundred ($100.00) dollars under 20 O.S.Supp.1986, § 15], required at the time of filing an appeal for the cost of the appeal, an additional charge or attorney fee was recoverable by the prevailing party as costs of the appeal from an appellant bringing an appeal determined to be "without merit". In our view, this is a logical conclusion given the codification of the provision as § 15.1, i.e. immediately following § 15 which requires the initial charge for filing an appeal.

Furthermore, prior to passage of § 15.1 we recognized where a statute allowed the prevailing party in the trial court to recover a reasonable attorney fee an additional award is allowable for appellate counsel services incurred in successfully defending an appeal. *Hamilton v. Telex Corporation*, 625 P.2d 106, 108–109 (Okla.1981); *Associates Financial Services, Inc. v. Millsap*, 570 P.2d 323, 326 (Okla.1977); *Parkhill Truck Co. v. Reynolds*, 359 P.2d 1064, 1068 (Okla.1961); *See also Ellis v. Lebowitz*, 799 P.2d 620, 621 (Okla.1990) and *B & P Construction Co. v. Wells*, 759 P.2d 208, 209 (Okla.1988) (both cases hold where a statute couched in mandatory language allows recovery of fees by the prevailing party at trial such party is entitled to appellate attorney fees for successfully defending an appeal). If § 15.1 were applicable only to appeals where a prevailing party was entitled to attorney fees for trial court services it would serve little or no useful purpose for the obvious reason we had previously determined prior to passage of § 15.1 attorney fees were allowable to a finally prevailing appellate party in such a situation. In essence, TRW's interpreta-

tion of § 15.1 provides us no more authority than we had determined we already possessed, a prospect we find both absurd and one which would exhibit a meaningless gesture on the part of the Legislature.

Our interpretation is also consistent with previous judicial pronouncements in relation to § 15.1. In *Hervey v. American Airlines*, 720 P.2d 712, 713 (Okla.1986), a case brought against an airline company in tort law for negligently failing to advise purchasers of a reduced cost vacation to Mexico of the weather conditions which existed during the periods of the tour, we said:

> Just as taking a vacation carries with it the risk of encountering rainy weather, filing a frivolous and vexatious appeal carries with it the risk that the Supreme Court may impose attorney fees as costs.

> The Court has thoroughly reviewed the record in this action together with the briefs and concludes that this appeal is patently frivolous, vexatious and wholly without merit.

> Appellees' attention is directed to 20 O.S.Supp.1982, § 15.1, providing for attorney fees on petition of the prevailing party for defending against a meritless appeal.

We are aware of no statute which would have allowed attorney fees to the prevailing party in the trial court in such a tort case as a matter of course.[4]

In two other cases, although there may have been a statutory or contractual basis allowing the prevailing party to recover fees in the trial court, neither we or the Court of Appeals relied on such fact to determine the prevailing party on appeal was entitled to fees under § 15.1. *Melinder v. Southlands Development, Inc.*, 715 P.2d 1341 (Okla.1985); *Local Federal S. & L. v. Burkhalter*, 735 P.2d 1202, 1206

---

4. What we mean by "of course" is, merely being a prevailing party in the trial court entitles one to attorney fees. This is to be distinguished from situations where upon certain trial court findings a prevailing party may be entitled to fees for bad faith or specified groundless conduct of an opponent. *See* 12 O.S.Supp.1987, § 2011; 23 O.S.Supp.1986, § 103 (in any action for damages for personal injury, except injury resulting in death, or in any action for damages to personal rights, attorney fees up to $10,000.00 are recoverable by a prevailing party upon finding a claim or defense was asserted in bad faith, was not well grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. In *Broadwater v. Courtney*, 809 P.2d 1310, 1312–1313 (Okla.1991), we used an abuse of discretion standard to review a trial court denial of fees based on a claim of entitlement under both § 2011 and § 103.

(Okla.Ct.App.1987). The basis for applicability was the patent frivolity or total lack of merit of the appeal. *Melinder, supra* at 1341 (also ruled the appeal was brought in bad faith solely for the oppressive purpose of delay); *See also Burkhalter, supra* at 1204–1206.

Section 15.1 also has been specifically applied to workers' compensation cases by Division 1 of the Court of Appeals (the same division that decided *Arnold, supra*) on at least three occasions. *Goodyear Tire and Rubber Co. v. Pratt,* 795 P.2d 115, 116–117 (Okla.Ct.App.1990); *Tyson Foods, Inc. v. Guthrie,* 773 P.2d 769, 771 (Okla.Ct.App.1989); *Thompson v. Duke Construction Co.,* 681 P.2d 1125, 1127 (Okla.Ct.App.1984). Although not applying the provision because of the peculiar circumstances involved, Division 4 of the Court of Appeals cited the *Thompson* case with approval as to application of § 15.1 to meritless appeals in workers' compensation cases. *Lee Way Motor Freight, Inc. v. Roberts,* 719 P.2d 470, 473 (Okla.Ct.App.1985). Finally, in a workers' compensation related appeal, although not applying § 15.1 because the appeal could not be said to be frivolous we, at least, implied the provision would apply in workers' compensation cases in an appropriate situation. *Harsha v. Maremont Corporation,* 784 P.2d 1070, 1074 (Okla.1989) (appellate attorney fees may be recovered under § 15.1 only against a party who has brought a frivolous appeal). Thus, we hold the statute is one of general application and a grant of authority to this Court or our designee to allow attorney fees for appellate work against one who takes an appeal that is "without merit" whether or not attorney fees are allowable for work in the trial court. This was the legislative intent and in so far as *Arnold, supra,* holds to the contrary it is specifically overruled.

PART II: A PATENTLY FRIVOLOUS APPEAL IS ONE HAVING NO LEGITIMATE LEGAL OR FACTUAL BASIS WHEN VIEWED AS A WHOLE

The American Rule where each litigant bears the cost of his/her legal representation is firmly established in Oklahoma and courts are without authority to award attorney fees in the absence of a specific statute or contract [*Kay v. Venezuelan Sun Oil Co.,* 806 P.2d 648, 650 (Okla.1991) ], with certain exceptions. *City National Bank & Trust Co. v. Owens,* 565 P.2d 4, 7 (Okla.1977). Here we do have a specific statute allowing an award of fees for appellate work in certain circumstances, but we recognize statutes allowing a prevailing party to recover attorney fees are strictly applied by this Court. *See Kay v. Venezuelan Sun Oil Co., supra* at 650. We also recognize the non-prevailing litigant in a workers' compensation case has a statutory right to appeal to this Court [85 O.S.Supp.1986, § 3.6(B) ] and awarding appellate fees in frivolous workers' compensation appeals has, at least, the potentiality to inhibit the filing of some meritorious appeals in such matters. We set forth such recognitions to make it plain it *is not* our purpose to chill the filing of arguably meritorious appeals in workers' compensation cases or any other type of litigation and it would be improper for us to attempt to do so. However, as we will explain, patently frivolous appeals, those sought to be deterred by the Legislature via § 15.1, are those which have absolutely no legitimate legal or factual basis and should not be mistaken for those having some arguable merit, though ultimately unsuccessful. Thus, such appeals cannot be said to be protected by the statutory right of appeal without the additional probability attorney fees will be exacted upon a determination of patent frivolity.

█ Stated in its basic form a frivolous appeal is one having no reasonable or legitimate legal or factual basis to support it. *Glanzman v. Uniroyal, Inc.,* 892 F.2d 58, 61 (9th Cir.1989); *U.S. Industries, Inc. v. Touche Ross & Co.,* 854 F.2d 1223, 1244–1245 (10th Cir.1988). It is an appeal where the result is obvious or appellant's arguments are wholly without merit. *McConnell v. Critchlow,* 661 F.2d 116, 118 (9th Cir.1981). An appeal is not frivolous mere-

ly because a trial court judgment or decision is affirmed and such fact does not imply an appeal is wholly unreasonable or without proper foundation. *U.S. Industries, Inc. v. Touche Ross & Co., supra* at 1244. To make a determination an appeal is frivolous the appellate court must look to the appeal as a whole. *White v. General Motors Corp.*, 908 F.2d 669, 675 (10th Cir. 1990) *cert. denied* —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). All doubts as to whether the appeal is frivolous should be resolved in favor of an appellant. *Green River v. Higher Education Personnel Board*, 107 Wash.2d 427, 730 P.2d 653, 661 (1986), quoting *Boyles v. Department of Retirement Systems*, 105 Wash.2d 499, 716 P.2d 869, 874 (1986) (Utter, J. concurring in part, dissenting in part). Only if there are no debatable issues upon which reasonable minds might differ and the appeal is so totally devoid of merit that there is no reasonable possibility of reversal will an appeal be deemed frivolous. *Id.* The determination of frivolity is made on an objective basis from a review of the entire record. *See U.S. Industries, Inc. v. Touche Ross & Co., supra* at 1244. Subjective motives or intent of a litigant or an attorney need not be inquired into, although we realize some bad or improper motive, such as to foster delay and/or pure obstinacy, will often be present.[5]

We also recognize under our Rules of Professional Conduct an attorney may seek in good faith an extension, reversal or modification of existing law. 5 O.S.Supp.1988, Ch. 1, App. 3–A, Rule 3.1. This right may justify the advocacy of tenuous positions and it, accordingly, mandates an appellate court view with *great caution* an assertion an appeal is frivolous. We are quite aware such good faith arguments are often made in appellate proceedings and on occasion lead to far reaching and beneficial changes in the law. *See Vanderpool v. State*, 672 P.2d 1153 (Okla.1983) (modified doctrine of governmental tort immunity). The law is often not settled in many areas, nor is it a static discipline, but one which evolves to adapt to new situations and arguments fashioned to meet them. *See Brigance v. Velvet Dove Restaurant, Inc.*, 725 P.2d 300 (Okla.1986) (changed rule of non-liability of tavern owners to innocent third parties injured in auto accidents proximately caused by serving alcohol to noticeably intoxicated person). Thus, any ruling we reach here or in other cases presenting an issue of attorney fees for a frivolous appeal should not stifle new or innovative arguments. However, when we are presented with a truly frivolous appeal attorney fees are warranted because such appeals have no place in the legal or appellate systems. Rather than benefiting the public or the judicial system, such appeals merely take valuable resources and time away from those cases having some arguable merit, which should be the ones given detailed study by the appellate bench. We now turn to the six cases confronting us.

## PART III: THE APPEALS IN CASE NOS. 74,973, 75,712 AND 74,918 ARE PATENTLY FRIVOLOUS

### A. CASE NO. 74,973.

Case No. 74,973 sought review of a three-judge panel order awarding 17.5% permanent partial disability to James Thomas for injury to his right elbow caused by cumulative trauma at work. The panel modified a trial court award of 22.5% disability. It left intact a trial court finding the disability was over and above any pre-existing disability Thomas had to the right arm as a result of a prior accidental injury. Two issues of error were alleged in the petition for review: 1) error as a matter of law in finding Thomas sustained a cumulative trauma accidental injury to his right elbow as a result of his employment at TRW and 2) error as a matter of law in ruling Thomas met his burden of proof to prove 1.

---

5. We note 20 O.S.Supp.1982, § 15.1 as it concerns the allowance of appellate attorney fees *is not* coextensive with the bad faith or oppressive conduct exception to the American Rule found in cases like *City National Bank & Trust Co. v.* *Owens*, 565 P.2d 4 (Okla.1977), although there may often be overlap between the statutory basis for an award under § 15.1 and the common law exception found in *Owens*.

Thomas went to work for TRW in 1971. He worked as a shipping clerk for 15 years, which entailed repetitive use of his arms to pack boxes and lift crates, steel boxes and other material on a daily basis. In either 1985 or 1986 he moved to the machine shop. The job entailed daily placement of bars in rotors and beating on the rotors with a brass hammer to straighten them. This latter job also entailed pulling and lifting motions with his right arm while working with metal parts. Thomas is right-hand dominant. Thomas first injured his right elbow at TRW in 1974 while attempting to stop a heavy part from falling. He received no medical treatment at the time nor did he file a compensation claim.

■ The deposition of Dr. M., with attached medical report, was admitted into evidence. He opined continuous and repetitive trauma to Thomas' right elbow at work caused such aggravation of the initial injury that arthritic problems were evident, the elbow could not be fully straightened, pain radiates up and down the arm and at times the elbow locks up. He rated Thomas' impairment at 50% permanent partial. The report of Dr. H. was admitted on behalf of TRW. He opined Thomas had a 3% permanent partial impairment of the upper extremity secondary to his right elbow complaints and the cause was most likely the old injury, although he noted the elbow could have been periodically aggravated over the years through his job activities. Dr. H. noted radiographs of the elbow revealed mild chronic degenerative changes and some narrowing of the joint space, which again, was most likely related to

past trauma. He, like Dr. M., found an inability to fully extend the elbow.[6]

In its amended petition for certiorari TRW initially says the appeal was not frivolous because it raised "substantial, fundamental legal issues concerning the claimant's burden of proof after repeal of the presumptions previously found in OKLA. STAT. tit. 85, § 27".[7] 85 O.S.1981, § 27, which provided for certain presumptions in favor of a claimant, was repealed by 1986 Okla.Sess.Laws, Ch. 222, § 32, pg. 785, effective November 1, 1986. TRW *did not* raise below its repeal or the inapplicability of any presumptions favoring Thomas.[8]

■ An appellant cannot prevail or seek review on a theory not presented below. *Parkhill Truck Co. v. Reynolds, supra,* 359 P.2d at 1067. This general rule applies in workers' compensation cases [*Bostick Tank Truck Service v. Nix,* 764 P.2d 1344, 1349 (Okla.1988) ], although we have relaxed it where plain error is present. *Chamberlain v. American Airlines,* 740 P.2d 717, 722 (Okla.1987). No plain error is evident which would allow relaxation of the rule nor does TRW argue otherwise. We must assume neither the trial court or panel applied any presumptions in favor of Thomas and they *were* familiar with the repeal of § 27, a repeal *occurring almost three years prior to the trial court hearing.* Indeed, in an opinion handed down eight and one-half months prior to the September 1989 hearing, we specifically noted the repeal of § 27. *Decker v. Oklahoma State University,* 766 P.2d 1371, 1373 n. 1 (Okla.1988). Nothing in the record indicates application of any pre-

---

6. Neither doctor was required to use the American Medical Association Guides to the Evaluation of Permanent Impairment. 85 O.S.Supp. 1988, § 3(11) [now 85 O.S.Supp.1990, § 3(11) ] does not require use of the Guides when an injury or loss relates to a scheduled member, such as the arm, covered by 85 O.S.Supp.1987, § 22, para. 3 [now 85 O.S.Supp.1990, § 22, para. 3]. Dr. H. did use the American Medical Association Guides to the Evaluation of Permanent Impairment (2d ed.1984). Dr. M. did not.

7. As pertinent § 27 provided in part:
 In any proceeding for the enforcement of a claim for compensation under the Workers' Compensation Act, it shall be presumed in the

absence of substantial evidence to the contrary;
 1. That the claim comes within the provisions of the workers' compensation Act.
The other subsections of § 27, i.e. 2–6, have no applicability to any of the six cases before us and TRW does not argue otherwise.

8. We have not been provided a transcript of any proceedings before the three-judge panels in any of the six cases. However, the repeal of § 27 was not raised in any of the six in written materials submitted to the panels, nor in any document, pleading or argument submitted to or made before a trial judge.

sumptions in favor of Thomas, unless one relies on TRW's loss below which would be unwarranted, and TRW nowhere expressly argues differently. Thus, the argument concerning repeal of § 27 is frivolous because it lacks both a legal and factual basis.

TRW also asserts in its amended certiorari petition it genuinely questioned whether Thomas met his burden of proof to show cumulative trauma at work caused him any accidental injury or whether, in fact, any complaints he had were "not just a manifestation of the aging process during the *course* of employment." (emphasis in original) The argument is frivolous because no evidence supports a finding Thomas' disability was merely a manifestation of the aging process. At the time of hearing Thomas was in his early forties and neither the report of TRW's doctor or anything else in the record supports a claim the elbow complaints were merely the result of the aging process. When a party appeals on a factual issue and the record is completely devoid of evidence supporting the claim, a finding of frivolity is warranted. *See Matter of Estate of Suesz*, 228 Kan. 275, 613 P.2d 947, 950 (1980). Other arguments raised by TRW on appeal are similarly frivolous.

TRW argued in its brief in chief the proof was insufficient to show cumulative trauma caused an accidental injury or any injury sufficient to meet the definition of an accidental injury under our workers' compensation laws. Like a majority of the Court of Appeals, we can read TRW's appellate submissions as mainly nothing more than an invitation to reweigh the evidence and substitute our judgment for that of the lower tribunals on questions of fact, something we may not do under the teaching of *Parks v. Norman Municipal Hospital*, 684

P.2d 548, 552 (Okla.1984). Although TRW acknowledges the *Parks* any-competent-evidence test is applicable on appellate review of factual questions in workers' compensation cases and it does not seek to change the test, it haphazardly challenges factual findings of the lower courts when there is clearly sufficient evidence to sustain an award in favor of Thomas or it makes legal arguments on appeal which ignore clearly established law.

TRW admits, as it must, we recognized long ago an accidental injury includes those caused by cumulative trauma, as well as those resulting from a single event, the time of which can be fixed. *See Macklanburg–Duncan Co. v. Edwards*, 311 P.2d 250 (Okla.1957). After raising its argument based on repealed § 27, TRW appears to argue in its brief in chief Thomas' evidence failed to prove cumulative trauma caused an accidental injury because there was some deficiency in his proof as to whether the problems with his arm occurred unexpectedly or unintentionally. TRW quotes from *Macklanburg–Duncan*, *supra* and *Munsingwear, Inc. v. Tullis*, 557 P.2d 899, 903 (Okla.1976), which read together *do* require an injury caused by cumulative trauma to occur unexpectedly or unintentionally. The problem with TRW's argument is there is no indication Thomas' expected or intended to injure his elbow at work. Although the evidence was he had problems with it for a number of years prior to filing his claim such fact is no different than the evidence in *Macklanburg–Duncan*, where the claimant had experienced a burning and drawing in his right hand for a period of three years prior to bringing a compensation claim.[9] Clearly, there is competent evidence here to support a finding the injury to Thomas' elbow occurred without expectation or foresight, and it occurred unexpectedly and uninten-

9. TRW *does not* raise on appeal in any of the six cases before us a statute of limitation defense based on the awareness doctrine as set forth in *Coy v. Dover Corporation/Norris Division*, 773 P.2d 745 (Okla.1989) and *Munsingwear v. Tullis*, 557 P.2d 899, 903 (Okla.1976). Thus, we have no occasion to decide whether the evidence here might have supported a limitation defense based on the argument Thomas was aware of his el-

bow problems and their connection with work such that the applicable statute of limitation would have run prior to his filing the instant claim for benefits. A statute of limitation defense in a workers' compensation case is an affirmative defense and may be waived. *Munsingwear, supra* at 901; *See National Zinc Co. v. Moody*, 556 P.2d 268, 269 (Okla.1976).

tionally. Thus, an argument to the contrary is frivolous.

■ TRW next argues Thomas failed to show some type of physical defect or pathologic change caused by cumulative trauma. It even says in proposition 3 of its brief in chief, if Thomas' evidence is legally sufficient to prove a cumulative trauma accidental injury, "then every employee in Oklahoma who experiences pain at work has a similar claim." The assertion is nonsense. Although TRW is correct pain alone is not compensable [*Robertson v. Fo-Mac Enterprises*, 431 P.2d 342, 343 (Okla.1967), the evidence *does not* merely support a finding of the suffering of pain.

■ TRW says in its brief in chief Dr. M. found no objective physical defects or pathologic changes to the elbow.[10] This is incorrect. The deposition of Dr. M. indicates x-rays were taken of the elbow and osteoarthritic changes were evident. Dr. M. also found an inability to fully straighten the elbow. Reading the deposition of Dr. M., together with his attached medical report, it is clear his opinion is the problems Thomas is having with his elbow, including the osteoarthritic ones, are caused by the repetitive trauma at work.[11] A physician's opinion need not be given in categorical terms and an award is based on competent evidence when it is supported by the general tenor and intent of the medical testimony. *National Zinc Co. v. Stefanopoulos*, 405 P.2d 998, 1001 (Okla.1965). The opinion of Dr. M. suffices as competent evidence there were physical or pathological changes to the elbow caused by cumulative trauma at work.[12]

■ Our law allows recovery for an anatomical abnormality or loss, or functional abnormality or loss, both of which were shown here. 85 O.S.Supp.1988, § 3(11) [now 85 O.S.Supp.1990, § 3(11)]. In defining permanent impairment § 3(11) says it is, "any anatomical or functional abnormality or loss after reasonable medical treatment has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made." TRW wholly ignores the § 3(11) definition of permanent impairment in its appeal to this Court, something it may not do given the evidence from Dr. M.

■ TRW's assertion the evidence is insufficient is even more incredible when one considers its own doctor, Dr. H., found chronic degenerative changes to the elbow, narrowing of the joint space and an inability to fully extend the elbow. It does not matter for purposes of reviewing the award Dr. M. and Dr. H. disagreed as to causation or extent of permanent impairment. As to review of these latter questions our established law is they involve factual determinations of the lower tribunals which are impervious to attack if supported by competent evidence. *Cassidy v. Harding*, 451 P.2d 698, 699–700 (Okla.1969); *Cassidy v. Noe*, 471 P.2d 459, 461 (Okla.1970). *Harding* also makes clear a lower tribunal, as trier of fact, may rely *in part* on a claimant's medical evidence and *in part* on an employer's medical evidence in reaching a decision because, as trier of fact, it may accept part of a witnesses' testimony, while rejecting other parts. *Id.* at 699–700. As long as the findings of the lower court are not incompatible with the overall evidence, as accept-

10. Cases cited by TRW to support its argument objective physical or pathologic changes must be shown are *Refrigerated Transport, Inc. v. Creek*, 590 P.2d 197 (Okla.1979); *Transcon Lines, Inc. v. Curtis*, 402 P.2d 269 (Okla.1965); *Crest Building Corp. v. Lowe*, 388 P.2d 512 (Okla.1964); *G.T. Harvey Co. v. Steele*, 347 P.2d 802 (Okla.1959); *Consolidated Gas Utilities Corp. v. Jeter*, 205 Okl. 471, 238 P.2d 804 (Okla.1951); *Tyson Foods, Inc. v. Guthrie*, 773 P.2d 769 (Okla.Ct.App.1989).

11. Osteoarthritis can be caused by trauma and other conditions [STEDMAN'S MEDICAL DIC-

TIONARY 1107 (25TH ed.1990)], some unrelated to either singular or cumulative trauma, as acknowledged by Dr. M. at his deposition.

12. Pathology is defined as, "[t]he medical science, and, specialty practice, concerned with all aspects of disease, but with special reference to the essential nature, causes, and development of abnormal conditions, as well as the structural and functional changes that result from disease processes". STEDMAN'S MEDICAL DICTIONARY 1150 (25TH ed.1990) (emphasis added).

ed or rejected, there is no basis for disturbing the factual determinations. *Id.*

▬ Although TRW does not believe Dr. M. gave a credible opinion, questions of credibility are for the trier of fact in workers' compensation cases. *Pearl v. Associated Milk Producers, Inc.*, 581 P.2d 894, 896 (Okla.1978). Nothing required the lower tribunals to rule for TRW merely because there was conflicting proof [*Id.*] and it is not the province of an appellate court to weigh conflicting evidence to determine where the preponderance lies. *Lee Way Motor Freight, Inc. v. Highfill*, 429 P.2d 748, 749 (Okla.1967). TRW raises no legitimate reason why the lower courts could not rely on the opinion of Dr. M. as to causation and in view of this fact, the factual determinations of the lower courts are conclusive and binding on an appellate court (*Parks, supra* at 552), something TRW should have been aware of prior to bringing this appeal.[13]

TRW also says in proposition 3 of its brief in chief, "[t]o meet the test of 'accidental injury' under Oklahoma law, Claimant should, at a minimum, be required to prove that he has incurred some objective signs of physical detriment due to his exposure to 'cumulative trauma'—either a definite pathologic change, necessity for continued medical treatment, inability to do his job, or genuine restrictions in his functional ability." TRW's arguments in such regard are frivolous because they again ignore facts presented below or our workers' compensation law.[14]

The issue concerning objective signs of physical detriment due to exposure to cumulative trauma or genuine restrictions in functional ability have already been basically discussed. Both doctors found objective signs of physical detriment. It is irrelevant for review purposes the two disagreed on cause. As to the functional ability issue both doctors agreed there was an inability to fully extend the arm, but again disagreed on causation. If TRW is attempting to argue by its use of the word "genuine" the loss of function found by both doctors was not severe enough to support an award, it wholly misses the mark. In our view, it is beyond dispute a person who cannot fully extend his arm like a "normal" person has suffered a genuine restriction in the arm's functional ability, although depending on the amount of extension ability, it may be a minor loss in function. Accordingly, as to physical detriment and functional ability TRW's arguments are frivolous because they have absolutely no factual basis.

---

**13.** TRW points out in its brief in chief it made a probative value objection to Thomas' evidence which challenged the legal sufficiency of the evidence to support the compensation award. It cites *Wheat v. Heritage Manor*, 784 P.2d 74 (Okla.1989), for the proposition this is the only method available in workers' compensation cases to challenge the sufficiency of a claimant's evidence and to obtain a determination a claimant failed to carry his burden of proof. Although this may be correct from a purely technical standpoint, the fact remains the evidence submitted by Thomas was sufficient to support an award *and* the record as a whole, including some of the evidence submitted by TRW's own medical expert, provided competent evidence to support the lower tribunal's decision. Thus, no reasonable basis existed to believe a reversal would be achieved on appeal under long recognized legal principles. Furthermore, where an employer challenges a claimant's evidence below with a "demurrer-type" objection or motion and then introduces evidence of its own the trier of fact in a workers' compensation case may consider all the evidence in reaching a decision. *See Banning v. Peru–Laclede Syndi-*

*cate*, 179 Okl. 382, 65 P.2d 976, 979 (Okla.1937). If the decision is ultimately supported by competent evidence, *regardless of which side presented it*, the decision will not be disturbed. This is the obvious import of cases such as *Cassidy v. Harding*, 451 P.2d 698, 699–700 (Okla.1969), where we ruled the trier of fact can rely in part on claimant's medical evidence and in part on an employer's medical evidence in reaching its decision.

**14.** The last paragraph of proposition 3 of TRW's brief in chief makes it clear TRW does not request a change, modification or extension of existing law and the textual arguments just set forth are not viewed by TRW as exhibiting any change in Oklahoma workers' compensation law. TRW expressly says in the paragraph the standards it expounds do "not constitute a change in Oklahoma's law in any respect...." TRW makes the same statement in the last paragraphs of proposition 3 of its briefs in chief in Case Nos. 75,712 and 74,918, the other two cases out of the six we determine to be patently frivolous.

 The argument concerning inability to do his job is flawed because it ignores Oklahoma workers' compensation law. We have determined 85 O.S.Supp. 1987, § 22(3) [now 85 O.S.Supp.1990, § 22(3)] *does not* require a showing of loss of time from work to prove permanent partial disability for accidental loss of function in a scheduled member (here the arm). *Peabody Galion Corp. v. Workman*, 643 P.2d 312, 317 (Okla.1982); *Nuway Laundry Co. v. Trice*, 182 Okl. 518, 78 P.2d 706, 707 (Okla.1938).[15] TRW cannot simply ignore the law without the probability a determination will be made that arguments which do ignore well established law will be deemed patently frivolous. *See Evans v. Arthur*, 139 Ariz. 362, 678 P.2d 943, 945–946 (1984) (combination of frivolous legal issue and improper review procedure warrants award of fees against counsel personally); *Price v. Price*, 134 Ariz. 112, 654 P.2d 46, 47 (Ariz.App.1982) (law clearly established).

 TRW's argument a claimant could show permanent partial disability if a showing was made of "necessity for continued medical treatment" is another patently frivolous one. There is no such requirement under our law. Permanent disability is just that, i.e. it is legally assumed to be permanent. Permanent or stationary conditions generally do not require medical care or maintenance. *Bill Hodges Truck Co. v. Gillum*, 774 P.2d 1063, 1065–1066 (Okla.1989).

Proposition 3 of TRW's brief in chief also contains the following argument:

**15.** Even where an injury falls under the "other cases" provision of 85 O.S.Supp.1987, § 22, para. 3 [now 85 O.S.Supp.1990, § 22, para. 3], rather than under the scheduled member subsection, it has long *not* been necessary for a claimant to establish a loss of wage earning capacity to prove a case for permanent partial disability because of a 1941 legislative amendment. *E.I. Du Pont De Nemours & Co. v. Spencer*, 195 Okl. 300, 157 P.2d 186, 187 (1945). *Spencer* was a case where a hydraulic lift rolled onto the right side of claimant's penis. Although claimant missed three weeks of work immediately subsequent to the accident there is nothing to indicate after said time claimant was unable to perform his job as a millwright and yet we sustained an award of 30% permanent partial disability. We also ruled in *Ford v.*

[I]f claimant's proof in the present case is sufficient to establish a "cumulative trauma" injury, then any employee who suffered a specific accidental injury in years past can file a similar claim, fifteen years or more after the fact to recover for that accident, by simply calling the claim a "cumulative or repetitive trauma" claim. The concept of a "cumulative trauma" claim should not be stretched to include those types of claims.

The argument is not supported by any authority and, again, it is an argument evidencing TRW's disregard for the law.

 Where the evidence establishes two accidental injuries the question of whether or not disability should be attributed to the first accident or the second is a question of fact and depends on whether the disability sustained was caused by a recurrence of the original injury or by an independent and intervening cause. *Hall v. Howard Johnson of Oklahoma, Inc.*, 297 P.2d 560, 563 (Okla.1956). As with other factual questions where the proof is conflicting the decision of the lower tribunal will not be disturbed where reasonably supported by competent evidence. *Id.*

 As we have already set out, the doctors for Thomas and TRW disagreed as to causation and percentage of impairment. Dr. M. attributed the elbow problems to cumulative trauma over the years while working at TRW and Dr. H. attributed his rating for partial impairment to the 1974

*Nellie B. Mining Co.*, 208 Okl. 265, 255 P.2d 504, 506 (1953), where a claimant asserted he lost his sense of smell and part of his sense of taste from inhaling certain fumes at work, proof of lost wage earning capacity was no longer necessary to show permanent partial disability after the other cases subsection of § 22 was amended. There is absolutely no indication in *Ford* claimant was unable to perform his job after the claimed accidental injury. Very simply, the 1941 legislative amendment removed any necessity to prove a loss of earning power in order to recover compensation for permanent partial impairment and the amendment arbitrarily fixed the amount of benefits measured by a claimant's physical condition or degree of disability sustained. *Service Pipe Line Co. v. Cargill*, 289 P.2d 961, 962–963 (Okla.1955).

accident. The lower tribunals obviously did not totally believe either doctor. This is obvious because the trial court specifically noted the percentage of disability was over and above any pre-existing disability caused by the prior injury, a determination not disturbed by the panel. As already noted, it is not improper for the trier of fact to rely in part on a claimant's medical evidence and in part on an employer's medical evidence in reaching its decision as long as the findings are not incompatible with the overall evidence, as accepted or rejected. *Cassidy v. Harding, supra,* 451 P.2d at 699–700. The argument is yet another frivolous one.

In the final analysis this record unequivocally contains competent evidence to prove Thomas' claim of permanent partial disability caused by cumulative trauma at TRW. The arguments raised by TRW on appeal are patently frivolous because they either challenge unassailable factual determinations and/or ignore clearly established law. Appellate attorney fees in favor of Thomas are, thus, warranted because the appeal as a whole had no legal or factual basis to support it.[16]

## B. CASE NO. 75,712.

■ Case No. 75,712 sought review of a panel order affirming a trial court award of 20% permanent partial disability to the right leg due to accidental job-related injury to the right knee and 30% permanent partial disability to the left leg due to job-related injury to the left knee, combined to 25% permanent partial disability to the body as a whole. The disability found was over and above pre-existing permanent partial disability of 15% to the right knee and 25% to the left knee as a result of previous injuries to the knees which were not related to work at TRW.[17] The trial was held in December 1989 and the evidence was essentially as follows.

Jim Swalley, 34 at the time of trial, worked for TRW for sixteen years. In 1971 he injured his left knee playing football, which required an open arthrotomy of the knee for a medial meniscectomy and excision of a partial tear of the anterior cruciate ligament. He again injured the knee in 1977 prior to an alumni football game and underwent surgery for the removal of the lateral meniscus. In the early 1980s he injured his right knee off-the-job and underwent a medial meniscectomy. Swalley essentially testified that after the normal rehabilitative process he did not experience any significant problems with the knees other than slight stiffness. Such testimony is consistent with certain historical medical records introduced by TRW which show full range of motion had returned to the left knee about one month

---

**16.** TRW argues in its amended petition for certiorari two previous orders denying appellate fees in separate cases should be persuasive, if not controlling, in the present case and, in fact, in all six of the cases before us. The two cases are TRW/REDA v. Thomas, S.Ct. No. 75,752 and TRW/REDA PUMP v. Duede, S.Ct. No. 75,781. In No. 75,752 on April 29, 1991 we denied an application of claimant for attorney fees under § 15.1 and in No. 75,781, Division 4 of the Court of Appeals denied a similar request on July 15, 1991. As TRW acknowledges, both cases concerned claims of respiratory impairment. In our view, these cases are not persuasive or controlling authority in a case involving cumulative trauma causing injury to the arm. *The problem with TRW's argument in relation to these orders is TRW does not seem to appreciate that, like the decision to award attorney fees for a patently frivolous appeal, the decision to appeal a case must be made on an individual case-by-case basis depending on the special facts and applicable law. The decision to appeal should not and cannot be made as a* knee jerk reaction simply because a party lost in the lower court. More is required to make the decision to appeal, i.e. a reasoned judgment on the facts and the law with an eye to determining whether there is some basis to believe an error was committed which would support a *reasonable* argument reversal or other appropriate appellate relief is required.

**17.** It is proper for a trial court to apportion disability caused by prior off-the-job injury and impairment caused by work-related aggravation of such a prior injury, where the evidence warrants. *Dorris v. Continental Carbon Co.,* 717 P.2d 603, 604–605 (Okla.1986). If this were not the case, the real possibility would exist the employer would have to bear the entire burden of paying for the full permanent impairment if any disability resulted from work-related causes. *Id.* Apportionment in such situations insures an employer is responsible only for those accidental injuries arising out of and in the course of employment.

after each surgery on the left knee and a satisfactory recovery as to the right knee.

During approximately 16 years with TRW Swalley worked 11 years in shipping and receiving. He also worked in the foundry about three years, the machine shop for six months and the assembly department for two years. The duties in shipping and receiving required heavy lifting, climbing and frequent walking on concrete floors. Work in the assembly department involved standing for long periods of time on concrete floors. Several years prior to filing his claim he began to experience increased problems with both knees, although the left was worse than the right. He experienced pain, popping and grinding in the knee joints, stiffness and swelling.

The deposition of Dr. M., with attached medical report, was submitted by Swalley. Dr. M. opined Swalley had a pre-existing permanent partial impairment to each knee of 10% caused by the previous injuries and an additional 50% permanent partial impairment to each knee caused by continuous standing and walking for long periods of time on concrete floors while working at TRW, which resulted in a 50% permanent partial impairment to the body as a whole. The opinion of Dr. M. was repetitive walking and standing on concrete floors aggravated the pre-existing condition of the knees caused by the earlier injuries. He also found a loss of range of motion in both knees and it was his opinion Swalley would need anti-inflammatory and pain medication and intermittent physical therapy in the future. TRW submitted the medical report of Dr. G. who also found a loss of range of motion in both knees, which he attributed to the size of Swalley's thighs. Dr. G. rated Swalley's permanent partial impairment as 15% for the right lower extremity caused by the off-the-job injury and arthritis and a 35% permanent partial impairment to the left knee caused by the previous injuries and arthritis. He attributed none of the impairment to work at TRW. Dr. G. also found narrowing of the medial joint space of the right knee and a narrowing of both medial and lateral compartments of the left knee.

TRW's arguments in the instant case are virtually identical to those made in the Thomas case. The arguments, like those in Thomas, are nothing more than an invitation to reweigh the evidence or are based on purported legal theories which ignore clearly established law. In our view, the same result obtains as to appellate attorney fees because TRW either ignores the law or the facts in virtually the same particulars as in Thomas. Accordingly, appellate attorney fees in favor of Swalley are warranted because the instant appeal had no reasonable or legitimate legal or factual basis to support it and it was, thus, patently frivolous.

C. CASE NO. 74,918.

Case No. 74,918 sought review of a three-judge panel order affirming a trial court award to Steven Dean of 7.5% permanent partial impairment to the body as a whole as a result of a back injury caused by cumulative trauma at work. As in the Thomas and Swalley cases two issues of error were alleged in the petition for review: 1) error as a matter of law in finding Dean sustained a cumulative trauma accidental injury to his back as a result of his employment at TRW and 2) error as a matter of law in ruling Dean met his burden of proof to prove 1.

Dean worked for TRW for 18 years doing heavy manual labor, which included a lot of lifting, bending and twisting. He testified when he went to work for TRW he had no problems with his back.

In its brief in chief TRW admits Dean presented evidence he had restrictions in his range of motion of the lumbar region of his back when Dr. M. examined him. Dr. M. gave an opinion the loss of range of motion and pain in the lumbar area were caused by cumulative trauma by years of heavy lifting at TRW, which included repeated lifting and stacking of 120 pound stators. Dr. M. also observed muscle spasms in Dean's back when the doctor examined him. There was evidence Dean did not have these back problems when he went to work for TRW. The report of Dr. H. was submitted on behalf of TRW. He

found no impairment, no evidence of arthritis or degenerative disc disease, no tenderness or spasm and no decrease in range of motion. His conclusion was Dean had mechanical lower back discomfort of a subjective nature, but no objective evidence of injury.

Under the American Medical Association Guides to the Evaluation of Permanent Impairment, Ch. 1, The Extremities, Spine and Pelvis 47–58 (2d ed.1984), loss of range of motion is an appropriate method used to evaluate impairment. Dr. M. indicated in his medical report he used the 1984 Guides and he so testified in his deposition. TRW, after admitting Dr. M. found a loss of range of motion *completely ignores* the fact the 1984 Guides allow a physician to base an impairment rating on such a loss of range of motion.[18] As already noted in the Thomas and Swalley cases an appellant cannot simply ignore the law applicable to the issue it raises on appeal without the probability attorney fees may be awarded for the maintenance of a frivolous appeal.

In that our law allows recovery not only for an anatomical abnormality or loss, but for *functional abnormality or loss* [85 O.S.Supp.1988, § 3(11)] and Dr. M. gave an opinion of a functional loss (the loss of range of motion) caused by cumulative trauma at work, the arguments raised by TRW, like those in the previous two cases, are nothing more than an attempt to have an appellate court reweigh the evidence. Other arguments raised in the Dean case are virtually identical to those raised in the previous two cases and are for the same reasons patently frivolous. Accordingly, appellate attorney fees are warranted in favor of Dean and against TRW for bringing a patently frivolous appeal having no legal or factual basis.

## PART IV: THE APPEALS IN CASE NOS. 74,839, 74,972 AND 75,686 ARE NOT PATENTLY FRIVOLOUS

The remaining cases concern awards for work-related injury to the lungs and/or respiratory system. In Case No. 74,839 a three-judge panel affirmed an award of 17% permanent partial disability to the body as a whole due to lung injury and 12% disability to the body as a whole due to upper respiratory system injury. In Case No. 74,972 a panel modified a trial court award of 14.5% impairment due to upper respiratory injury to 7.5% impairment. In Case No. 75,686 a panel modified a trial court award of 25% impairment due to lung injury and 10% due to air passage defects to 25% impairment due to lung injury and 4% impairment due to air passage defects.

One of the issues raised on appeal in all three cases was that the medical evidence relied on to show work-related causation was too speculative. Particularly, TRW argued the doctors giving an opinion the impairment was caused by work at TRW had insufficient information concerning the extent, duration or concentration of exposure to harmful chemicals in the workplace to give a probative opinion on causation. In light of at least two recent cases concerning causation questions in lung and/or respiratory impairment cases we are unable to say this issue had no reasonable legal or factual basis, although it was unsuccessful in the Court of Appeals.

We recognized in *Zebco v. Houston,* 800 P.2d 245, 246–247 (Okla.1990) and *York v. Burgess–Norton Mfg. Co.,* 803 P.2d 697, 703 (Okla.1990), the American Medical Association Guides to the Evaluation of Permanent Impairment (2d ed.1984), required certain specific information concerning the period or extent of exposure to harmful substances in the workplace and the hazard posed by the chemicals or agents to a claimant.[19] In essence, those cases set out

---

**18.** The American Medical Association Guides to the Evaluation of Permanent Impairment (3rd ed.1988) require range of motion tests be repeated at least three times and which must fall within +/−10% or 5 degrees (whichever is greater) of each other to be considered consistent. 1988 AMA Guides, pg. 71. The 1984 Guides do not require such repetition. Both

Dean's doctor, Dr. M. and TRW's doctor, Dr. H. conducted their evaluations in conformity with the 1984 Guides.

**19.** The Guides state an examining physician should question an employee:

"about exposures to dusts, gases, vapors and fumes. The specific information required in-

what information would be required to comply with the Guides.[20] In *Zebco* at 247, we said in the absence of the specific information required by the Guides a physician's opinion would be regarded as devoid of probative force. Although the medical evidence supporting the claimants in the remaining cases was more specific than the information the doctor had before him in the *Zebco* case, because neither *Zebco* or *York* were finally decided prior to the filing of the appeal or initial briefs in any of the three cases, we cannot say the argument concerning lack of sufficient knowledge of the details of exposure was without all reasonable or legitimate legal basis in light of admissions by the physicians in all three cases they lacked, at least, certain information as to the extent of exposure.[21] In regard to this issue the law was in a state of flux and it would be improper for us to conclude no debatable issues were contained in the appeals where the law was not yet settled. Accordingly, we hold the appeals, although unsuccessful, were not patently frivolous so as to support an award of appellate attorney fees.

> volves (1) the year he or she was first exposed to an agent; (2) the extent of the exposure; (3) the total number of years of exposure; (4) his or her estimate of the hazard that the agent posed; and (5) the number of years since exposure ceased."

American Medical Association Guides to the Evaluation of Permanent Impairment (2d ed. 1984) at 86.

**20.** We also discussed the requirements of the Guides concerning the extent of exposure in *Gaines v. Sun Refinery and Marketing,* 790 P.2d 1073, 1078–1079 (Okla.1990).

**21.** We note from a review of the American Medical Association Guides to the Evaluation of Impairment (2d ed.1984), upper respiratory system impairment appears to be controlled by and is to be evaluated in accordance with Table 5–Classes of Air Passage Defects found in Chapter 7–Ear, Nose, Throat and Related Structures at 160, rather than under Chapter 3–Respiratory System. We further note the specific section in Chapter 7 dealing with respiration at 160 of the Guides does not expressly require the detailed information required in Chapter 3 concerning the period or extent of exposure to harmful substances in the workplace (note 19, *supra* ). Both *Zebco* and *York* involved claims for lung impairment and upper respiratory system im-

## CONCLUSION

In view of the standards we have enunciated, we hold the appeals in Case Nos. 74,918, 74,973 and 75,712 were without merit and patently frivolous under 20 O.S.Supp.1982, § 15.1 for the reason none of the appeals presented any reasonable or legitimate legal or factual basis in support of reversal or other appellate relief. Claimants in those cases are, accordingly, entitled to appellate attorney fees. We also hold the appeals in Case Nos. 74,839, 74,972 and 75,686 were not patently frivolous because they raised, at least, one reasonably debatable legal issue in light of the facts present in the records in an area of the law that was in a state of flux. Accordingly, no appellate attorney fees are warranted in those cases. In Case Nos. 74,918, 74,973 and 75,712 we VACATE the July 2, 1991 Orders Granting Appellate Attorney Fees of the Court of Appeals and we REMAND to the trial court for a hearing to determine the reasonable value of appellate services in those cases and to issue an order against TRW and in favor of the respective respondents for such reasonable appellate attorney fees.[22] We further

pairment and no distinction was made in those cases as to the sufficiency of information required on period or extent of exposure.

**22.** The trial court should use the standards enunciated in *State ex rel. Burk v. City of Oklahoma City,* 598 P.2d 659 (Okla.1979), and its progeny to determine a reasonable appellate attorney fee. We note for guidance to the trial court on remand, fees under the *Burk* standards will be recoverable for appellate services *through* the filing of the applications for attorney fees, in other words services we deem related to resisting the merits of TRW's appeals. However, fees for any appellate services incurred resisting the defense of TRW to the recovery of fees at all in these workers' compensation appeals (i.e. services related to any response by TRW to the application for attorney fees or TRW's petitions for certiorari filed with this Court) would not be recoverable because we cannot say TRW's argument(s) in such regard were patently frivolous given its reliance on *Safeway Stores, Inc. v. Arnold, supra* for the proposition § 15.1 was not applicable to workers' compensation appeals. It must be remembered TRW did *not* request certiorari as to the underlying decision of the Court of Appeals to affirm the awards of the three-judge panels, but only as to that court's subsequent decisions on the attorney fee issue.

VACATE the Court of Appeals' July 9, 1991 Supplemental Opinions on Rehearing in Case Nos. 74,839 and 74,972 and the July 2, 1991 Supplemental Opinion on Rehearing in Case No. 75,686 in so far as they rule appellate attorney fees are warranted in these latter three cases.

OPALA, C.J., HODGES, V.C.J., and HARGRAVE, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS and DOOLIN, JJ., dissent.