2003 OK CIV APP 54

**Eddie Ray HODGES, Petitioner,**

v.

**HODGES ELECTRIC & AIR CONDITIONING, INC., Compsource Oklahoma & /or No Insurance, and the Workers' Compensation Court, Respondents.**

**No. 97,835.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 25, 2003.

Certiorari Denied June 3, 2003.

Rex D. Brooks, Oklahoma City, OK, for Petitioner.

J. William Archibald, Holloway, Dobson & Bachman, Oklahoma City, OK, for Respondents.

Opinion By TOM COLBERT, Vice Chief Judge:

¶ 1 Claimant, Eddie Ray Hodges, seeks this court's review of an order of the workers' compensation court's three-judge panel vacating the trial court's order. The panel awarded Claimant additional temporary total disability (TTD) benefits as well as permanent partial disability (PPD) benefits and apportioned the liability for those benefits between Employer, Hodges Electric & Air Conditioning, Inc., (Employer/No Insurance) and Employer's insurance carrier, Compsource Oklahoma (Employer/Compsource). The issues on review are whether the panel had authority to apportion the liability for the benefits and whether the order is supported by competent evidence. We answer in the affirmative and sustain the panel's order.

¶ 2 Claimant, an electrician, was the primary stockholder of Employer, a now-defunct corporation. On January 14, 1998, after Employer's operations were suspended, Claimant filed a claim for workers' compensation benefits for cumulative trauma injury

to his knees, shoulders, and body as a whole with a last date of exposure of December 31, 1997.

¶ 3 Claimant initially named Farmers Insurance Group as Employer's workers' compensation insurance provider and then added Compsource. Farmers was ultimately dismissed because Claimant "had no aggravating injurious exposure to his knees during the period of insurance coverage [August 1, 1997, through December 31, 1997] for Farmers." [1] Compsource, which insured Employer from February 2, 1996, through May 14, 1997, was left as the only insurance provider. The parties stipulated that Employer had no workers' compensation insurance coverage from January 1, 1996, through February 1, 1996, and from May 14, 1997, through August 4, 1997.

¶ 4 In an order dated December 1, 2000, the workers' compensation trial court concluded that Claimant suffered a work-related injury to his knees, but not to his shoulders, and temporarily set Claimant's TTD compensation rate at $81.08 per week. In an order nunc pro tunc dated December 19, 2000, the court awarded Claimant TTD for 43 weeks and 4 days to be paid by Compsource, subject to reimbursement from other responsible parties. Claimant subsequently requested PPD and underpayment of TTD and requested that the trial court consider his compensation rate. Following a trial, the trial court entered its order on January 7, 2002, awarding Claimant PPD, determining his compensation rate for TTD to be $81.08 per week, and apportioning the PPD between Employer/Compsource and Employer/No Insurance.

¶ 5 Claimant appealed to a three-judge panel, which vacated the trial court's order. The panel denied Claimant's claim for injury to his shoulders, but found that he had sustained a work-related injury due to cumulative trauma to his knees. The panel determined that Claimant's knee injury resulted in 21.86% PPD to the right leg (over and above

16.65% pre-existing disability) and 15.4% PPD to the left leg (over and above 23.1% pre-existing disability). The panel also determined that Claimant's wages established a rate of compensation of $140 per week for TTD and PPD and that Claimant was entitled to an additional two weeks of TTD for the period when he had knee replacement surgery. Finally, the panel apportioned the award, concluding that Employer/Compsource was liable for one additional week of TTD, 9.26% PPD to Claimant's right leg, and 7.7% PPD to his left leg, leaving Employer/No Insurance liable for the remaining week of additional TTD, 12.6% PPD to his right leg, and 7.7% PPD to his left leg.

¶ 6 Claimant now seeks this Court's review. He claims the panel exceeded its authority by apportioning the award between Employer/No Insurance and Employer/Compsource. He also contends that portions of the panel's order are not supported by competent evidence.

## STANDARDS OF REVIEW

¶ 7 Claimant's assertion that the panel lacked authority to apportion his award between Employer/No Insurance and Employer/ Compsource raises a question of law, which we review de novo. Ibarra v. Hitch Farms, 2002 OK 41, ¶ 4, 48 P.3d 802, 803–04. The remainder of Claimant's assertions raise issues of fact, for which we employ the any-competent-evidence standard of review. Parks v. Norman Mun. Hosp., 1984 OK 53, ¶ 2, 684 P.2d 548, 549.[2] In applying this standard, we review the facts, not to determine where the preponderance lies, but only to determine whether the panel's decision is supported by any competent evidence. Id. at ¶ 12, 684 P.2d at 552.

## DISCUSSION

¶ 8 This claim is complicated in two ways: First, Claimant was the majority stockholder

---

**1.** Claimant did not appeal from the order dismissing Farmers.

**2.** Claimant asserts errors in both the trial court's order and the review panel's order. Once the review panel vacates the trial court's order, its order replaces the trial court's and "there is

never more than *one* final decision to be reviewed in the appellate courts." *Parks v. Norman Mun. Hosp.*, 1984 OK 53, ¶ 11, 684 P.2d 548, 551. We, therefore, review *only* the panel's order.

of Employer, a now-defunct corporation, and Claimant did not receive an hourly or regular wage. Second, Compsource was Employer's insurance provider for only part of the period at issue: February 2, 1996, through May 14, 1997. Employer had no workers' compensation insurance coverage from January 1, 1996, through February 1, 1996, and from May 14, 1997, through August 4, 1997.

### I

¶ 9 The first issue we must consider is Claimant's assertion that the panel erred as a matter of law in apportioning the disability between Employer/No Insurance and Employer/Compsource. Claimant argues that a judgment was entered against Employer/No Insurance without it having entered an appearance or being represented by counsel.[3] He also argues that the panel did not have jurisdiction to apportion liability for benefits between two respondents.

¶ 10 In making this argument, Claimant is attempting to wear two hats, taking off one or the other whenever it serves. First, Claimant did not bring this proceeding as Employer/No Insurance's representative, but, instead, brought it against Employer as an individual employee. If Claimant is only Employer's employee, then he is not the real party in interest to raise Employer/No Insurance's interests here. *See James Energy Co. v. HCG Energy Corp.*, 1992 OK 117, ¶ 4, 847 P.2d 333, 338. If Claimant is serving as Employer/No Insurance's representative and is, therefore, the proper party to raise this argument, he waived it by not objecting at the trial court level to Employer/Compsource's request for apportionment, although the record clearly demonstrates that apportionment was at issue. *Davis v. Med. Arts Lab.*, 1998 OK CIV APP 1, ¶ 7, 952 P.2d 52, 54. Furthermore, Claimant's argument that Employer/No Insurance had no notice of its potential liability is belied by the Form 2—"Employer's First Notice of Injury," filed on February 9, 1998, and signed by Claimant in his capacity as Employer's president.

¶ 11 Claimant's argument that the panel exceeded its jurisdiction by apportioning benefits between the two respondents is also without merit. This is, essentially, an apportionment between two insurance carriers, because Employer/No Insurance was effectively self-insured during those times when it carried no workers' compensation insurance. Such apportionment by the workers' compensation court is clearly contemplated by 85 O.S.2001 § 203 of the workers' compensation statutes and has been expressly approved by the Oklahoma Supreme Court. *S.W. United Indus. v. Polston*, 1998 OK 78, ¶ 8, 964 P.2d 210, 212.

¶ 12 Claimant relies on *Red Rock Mental Health v. Roberts*, 1997 OK 133, ¶ 16, 940 P.2d 486, 491, wherein the Oklahoma Supreme Court observed that the workers' compensation court "has no jurisdiction to consider a controversy between (a) *two insurance companies in which an injured claimant is not interested*, (b) an employer and its insurer unless a claimant's right is affected, or (c) an employer and an insurance carrier of another employer if the statutory liability to the claimant is not implicated." (Footnotes omitted.) In *Red Rock*, an employer's insurance company sought reimbursement for TTD benefits from a subsequent employer, before any adjudication of liability on the part of the subsequent employer. The Court observed that "[n]o party-employer may be saddled with any obligation incident to a servant's on-the-job harm until the servant's claim for that injury has been adjudicated." *Id.* at ¶ 11, 940 P.2d at 490. In this instance, however, Claimant's interest is clearly implicated since there is no basis for holding Employer/Compsource ultimately liable for any portion of Claimant's benefits accruing outside of its insurance period. Unlike *Red Rock*, Employer's liability has been adjudicated, although it had insurance through Compsource for part of the period giving rise to that liability. There is, further, no indication of a contractual dispute between Employer and Compsource—Comp-

---

**3.** In practical terms, the result of apportionment is that Claimant may receive less than half the total benefits awarded for PPD, since he is un-

likely to recover benefits from Employer/No Insurance.

source has not argued that it is not liable for benefits accruing during the period it insured Employer and the parties stipulated to the dates Employer operated without insurance. The review panel did not exceed its authority by apportioning Claimant's award between Employer/No Insurance and Employer/Compsource.[4]

## II

¶ 13 Claimant next contends there is no competent evidence to support the panel's denial of a work-related injury to his shoulders. The record, however, contains ample competent evidence to support the panel's conclusion. Claimant testified that he hurt his left shoulder falling on ice at home on December 25, 1997. Although he previously had problems with "bursitis" in his left shoulder in 1994, he sought no treatment, aside from seeking a permit from his physician for cross-bow hunting. Claimant testified that he deliberately did not initially treat the shoulder injury as work-related:

> [The only additional shoulder treatment was j]ust the preparation for surgery. And I didn't want to fool with workers' comp anymore because I know what a rip-off people you are or your clients are, and I was going to have it done by insurance. And Dr. Harkness or Dr. . . . . Waltner. Put it in one of his reports that it was work-related so the insurance company throwed it out. So I was already set up. Had a date to go in and get the shoulder replaced and everything.

¶ 14 Medical evidence also supports the panel's determination that Claimant's shoulder injuries were not work-related. In his January 15, 1999, report, LeRoy D. Young, D.O., attributed Claimant's shoulder problems to arthritis, not work. Further, Dennis E. Foster, M.D., stated in his November 30, 1998, report: "It would be my opinion that [Claimant] would have developed the degree of arthritis that he has in his shoulders and knees regardless of his occupation." Although Dr. Foster continued, "That is not to say that his occupation has not contributed at least in some way," his report bolsters Dr. Young's conclusion that the condition of Claimant's shoulders is not related to his work.

¶ 15 Although there is evidence to the contrary, the existence of that evidence is immaterial, since we are searching only for competent evidence to support the workers' compensation court's factual finding. *Owings v. Pool Well Serv.*, 1992 OK 159, ¶ 7, 843 P.2d 380, 382. We will not reweigh the evidence. *Edwards v. Amoco*, 1989 OK CIV APP 15, ¶ 17, 776 P.2d 566, 569.

## III

### A

¶ 16 Claimant next argues the workers' compensation court erred in assigning a percentage of the disability in each knee to underlying degenerative arthritis, since such preexisting disability was not shown to be previously adjudicated or obvious and apparent. The review panel determined Claimant was a total of 38.51% PPD in his right leg, with 16.65% preexisting, and a total of 38.5% PPD in his left leg, with 23.1% preexisting. "It is proper for a trial court to apportion disability caused by prior off-the-job injury and impairment caused by work-related aggravation of such a prior injury, where the evidence warrants." *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 39 n. 17, 829 P.2d 15, 29 n. 17. The panel's apportionment was supported by competent evidence, both as to the existence of the preexisting injuries and their amount.

¶ 17 Employer/Compsource submitted the October 1, 2001, report of Andrew C. John, M.D., who noted that Claimant had surgery on his left knee for a football injury in 1964 or 1965 and that an x-ray in 1990 showed

---

4. We find no merit to Claimant's suggestion that Employer/Compsource's attorney behaved inappropriately in obtaining the apportionment. Further, as explained earlier in this opinion, either Claimant *is not* representing Employer/No Insurance, in which case he is not the proper party to raise this issue, or he *is* representing Employer/No Insurance, in which case he waived the issue by not raising it before the trial court. *See James Energy Co. v. HCG Energy Corp.*, 1992 OK 117, ¶ 4, 847 P.2d 333, 338, and *Davis v. Med. Arts Lab.*, 1998 OK CIV APP 1, ¶ 7, 952 P.2d 52, 54.

advanced osteoarthritis in his left knee. Dr. John diagnosed Claimant with "[e]xacerbation of degenerative arthritis of both knees" "related to cumulative trauma," and several injuries to the left knee and "[d]iffuse degenerative joint disease (osteoarthritis)" "unrelated, pre-existent or subsequent to cumulative trauma." (Emphasis omitted.) Dr. John concluded that, following his knee replacements, Claimant was a total of 37% PPD to the right leg, with 16% preexisting, and a total of 37% PPD to the left leg, with 23.5% preexisting.

¶ 18 Claimant introduced the November 6, 2001, report of Laurence H. Altshuler, M.D., who concluded that Claimant was a total of 40% PPD to each leg, with 60% of that amount (or 24% PPD) preexisting. Dr. Altshuler also concluded, however, that the work-related impairment to each leg accruing during the relevant time period was 14%, saying "[t]he remainder of the impairment is due to pre-existing disease, previous injuries and from impairment when he worked from August 4, 1997 until December 31, 1997." [5] The amounts determined by the review panel fall within the range of the experts' opinions and are, therefore, supported by competent evidence. *See Green Country Rest. v. Carmen*, 1978 OK 81, ¶ 18, 579 P.2d 1281, 1284, and *Yuba Heat Transfer v. Wiggins*, 1981 OK 72, ¶ 7, 630 P.2d 783, 784.

### B

██ ¶ 19 Claimant also contends that, even if it is legally proper (as discussed above), the panel's apportionment of liability between Employer/Compsource and Employer/No Insurance is "not fair." Of the total compensability for Claimant's knees of 21.86% for the right and 15.4% for the left, the review panel assigned 9.26% for the right, 7.7% for the left, and one additional week of PPD benefits to Employer/Compsource and 12.6% for the right, 7.7% for the left, and one additional week PPD benefits to Employer/No Insurance.

¶ 20 Without addressing whether Claimant is the proper party to raise this issue, we turn again to the reports of Dr. John and Dr. Altshuler and find competent evidence to support the panel's apportionment. Dr. John concluded that Claimant suffered 4.5% PPD to his left leg and 2.5% PPD to his right leg during the period when Compsource insured Employer and 9% PPD to his left leg and 18.5% PPD to his right leg during the period when Employer had no insurance. Dr. Altshuler concluded that Claimant suffered 10% PPD to each leg during the period when Compsource insured Employer and 4% PPD to each leg during the period when Employer had no insurance. The panel's apportionment falls within the range of the evidence and is, therefore, supported by competent evidence. *See Green Country*, 1978 OK 81, ¶ 18, 579 P.2d at 1284; *Yuba Heat*, 1981 OK 72, ¶ 7, 630 P.2d at 784.

### IV

██ ¶ 21 Claimant next argues there is no competent evidence to support a compensation rate of only $140.00 for TTD and PPD, as ordered by the review panel. He asserts that, based on 85 O.S.2001 § 21(3), the evidence he presented supported the maximum rates for both.

¶ 22 The $140 rate set by the review panel is based on the salary attributed to Claimant in Employer's Compsource insurance policy. Claimant introduced this policy into evidence at trial and argued that the $140 rate was the least the court could award. There is, therefore, competent evidence to support the compensation rate set by the panel.

¶ 23 There is also contradictory evidence. Claimant testified about the level of compensation an electrical contractor can command and testified as to Employer's billing rate for his services and the number of hours he worked each week. However, it does not appear that he offered any documentary evidence to bolster his testimony regarding his earnings and, regardless, the workers' compensation court was not compelled to accept Claimant's evaluation of his earning capacity. *See TRW/Reda Pump*, 1992 OK 31, ¶ 28, 829 P.2d at 27 ("[Q]uestions of credibility are for the trier of fact in workers' compensation cases."). Moreover, "it is not the province of

---

**5.** There is no explanation of the discrepancy between 24% preexisting PPD, 14% compensable PPD, and 40% total PPD.

[this] court to weigh conflicting evidence to determine where the preponderance lies." *Id.*

## V

¶ 24 Finally, Claimant argues that the review panel failed to make specific findings and conclusions of law concerning underpayment of his TTD benefits. He complains that, even though the higher compensation rate applied to the additional two weeks of TTD awarded, the panel's order did not address the fact that the previously-ordered TTD benefits were paid at the lower level ordered by the trial court. Claimant contends the review panel should have recognized that underpayment and ordered its correction.

¶ 25 Employer/Compsource makes the practical argument that it paid all of the PPD benefits originally ordered. Even though Compsource paid the TTD benefits at the lower rate originally ordered, it did so with the trial court's acknowledgment that its right of reimbursement was reserved. If the review panel had revisited the amount of those benefits, it would also have apportioned them. This would have left Claimant with no claim for additional benefits from Employer/Compsource; indeed, it might have resulted in an order for Employer/No Insurance to reimburse Employer/Compsource. We agree with Employer/Compsource and decline to disturb the panel's order.

## CONCLUSION

¶ 26 The panel's order granting Claimant additional TTD benefits as well as PPD benefits for cumulative trauma injuries to his knees is supported by competent evidence. The panel's apportionment of those benefits is within the workers' compensation court's jurisdiction and is also supported by competent evidence. The review panel's order is, therefore, sustained.

¶ 27 SUSTAINED.

STUBBLEFIELD, J., and RAPP, J. (sitting by designation), concur.